**SHAIN et al. v. ARMOUR & CO.**

No. 256.

District Court, W. D. Kentucky,
at Louisville.

June 17, 1943.

See, also, 43 F.Supp. 488.

J. Paul Keith, Jr., and Jones, Keith & Jones, all of Louisville, Ky., for plaintiffs.

R. Lee Blackwell and Bullitt & Middleton, all of Louisville, Ky., for defendant.

Irving J. Levy, of Washington, D. C., Jeter S. Ray, of Nashville, Tenn., John L. Young, of Versailles, Ky., Leonard E. Ladd, of Nashville, Tenn., and Hugh McCloskey, of New Orleans, La., for United States Department of Labor, amicus curiae.

MILLER, District Judge.

The plaintiff, Alfred C. Shain, brought this action on behalf of himself as an employee of the defendant, Armour & Company, and on behalf of approximately 57 other employees of the defendant to recover for the "time and a half" benefits of Section 7(a) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201 through 219. Following a pre-trial conference, the Court was asked to rule on the applicability of the Act to the plaintiffs as a whole, to certain groups of individuals of the plaintiffs, and to different individuals of the plaintiffs, considering in each case the conditions under which the services were being performed. If and where liability is found to exist further proceedings will be taken to determine the amount of recovery in each instance.

The defendant, Armour & Company, operates a plant at Number 333 Byrne Street, Louisville, Kentucky, which is known as Armour Creameries (hereinafter called Armour), at which all of the plaintiffs were employed during the period in controversy. Armour's business is divided into six departments which are generally known as the Creamery Department, Poultry Department, Cheese Department, Egg Department, Engine Room Department, and Shipping Department or Warehouse Department. It normally employs about 100 persons.

The Creamery Department is concerned primarily with handling butter which either (a) is churned at the plant from cream brought into the plant or (b) is churned elsewhere and brought into the plant in tubs in bulk, and after having remained in coolers the required time is taken into the Print Room where it is cut into pounds or smaller quantities, wrapped and cartoned, and then again placed in the coolers where it remains until it is shipped. Employees in this department receive, test, pasteurize and churn the cream and test, cut, print and carton the butter and perform other duties in connection therewith.

The Poultry Department is concerned primarily with handling poultry. Part of its business is buying, handling and selling live poultry; and part is buying, handling, slaughtering and dressing poultry at the plant or handling poultry dressed elsewhere, which is then stored in coolers until time for shipment. Live poultry is bought on markets throughout Kentucky, Indiana and Tennessee. Employees in the poultry department did some slaughtering, picking, and dressing of poultry and test, weigh and prepare for shipment poultry dressed prior to receipt at the plant.

The Cheese Department is concerned primarily with (a) curing and paraffining and storing in coolers green cheese brought into Louisville from three Kentucky plants outside Louisville, or (b) storing in coolers cheese already cured and paraffined which was manufactured elsewhere, until time for shipment. Employees in the cheese department insepected, weighed, racked and paraffined and packaged the cheese.

The Egg Department is concerned primarily with (a) packing and grading eggs which are stored in coolers until time for distribution or (b) grading and storing eggs or (c) storing broken canned eggs, until time for distribution. Other eggs are graded or candled elsewhere prior to being shipped to Louisville and upon receipt at the Louisville plant are stored and shipped as the demands of the business may require.

The Engine Room Department includes employees who are engaged as firemen, engineers, and in maintenance and repair of all of Armour's facilities; and the engine room provides the steam power for substantially all facilities for refrigeration, pasteurization, sterilization and other general purposes. Steam is also produced for an apparently nonaffiliated establishment belonging to Consolidated Produce Company, which is located adjacent to defendant's establishment at Louisville.

The Shipping or Warehouse Department is concerned primarily with receiving finished products, such as poultry, eggs, butter and cheese, and storage and shipping of the same. The defendant also employs route truck men who haul produce to the Louisville plant from receiving stations and the cheese factories, as well as drivers who haul produce to branch establishments. A city driver was also employed.

Each of the foregoing departments is in charge of a "key man" who is a working foreman. Several "key men" are plaintiffs in this action.

During the years 1939, 1940 and 1941 the defendant did an annual business of approximately from $5,000,000 to $7,000,000. This business was divided during the years in question among the four production departments as follows:

| Department | 1939 % | 1940 % | 1941 % |
|---|---|---|---|
| Creamery | 58.5 | 59.7 | 58.3 |
| Poultry | 17.5 | 16.9 | 20.3 |
| Cheese | 15 | 14.4 | 14.8 |
| Egg | 9 | 8.9 | 6.6 |

Armour maintains and operates 14 coolers or freezers as a part of its plant. The cream, butter in bulk, poultry, cheese and eggs come from Kentucky and points outside Kentucky; its finished products are distributed principally throughout Southeastern United States. The defendant's Louisville plant is an outlet of the Armour organization being used as a terminal for distribution of products going into Southeastern United States.

■ Whether or not the Act applies to any particular plaintiff depends upon the nature of the particular employee's duties. A. B. Kirschbaum Company v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. It would appear well settled that employees in the creamery, poultry, cheese and egg departments were engaged in the production of goods for commerce, within the provisions of the Act. United States v. F. W. Darby Lumber Co., 312 U.S. 100, 657, 61 S. Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. ——; Fleming v. Swift & Co., D. C., 41 F.Supp. 825, affirmed 7 Cir., 131 F.2d 249. Employees in the shipping or warehouse departments are likewise covered by the Act by reason of their duties receiving, handling, and shipping products coming from and going to other States. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. ——;

Fleming v. Swift & Co., supra. The maintenance employees, including engineers, mechanics, firemen and other employees engaged in producing steam, heat and power for the plant, as well as maintaining the plant, equipment and machinery are likewise engaged in the production of goods for commerce or in an occupation necessary thereto as defined by Section 3(j) of the Act, 29 U.S.C.A. § 203(j). A. B. Kirschbaum Co. v. Walling, supra; Warren-Bradshaw Drilling Co. v. Hall, supra. The normal applicability of the Act to these employees is not seriously contested by the defendant who relies chiefly for its defense upon specific exemption provisions of the Act hereinafter referred to.

■ The defendant claims complete exemption for all of the employee plaintiffs by reason of the provisions of that part of Section 7(c) of the Act which reads as follows: "In the case of an employer engaged in the first processing of milk, whey, skimmed milk, or cream into dairy products * * * the provisions of subsection (a) shall not apply to his employees in any place of employment where he is so engaged." Defendant contends that since it is engaged, through the operations of its Creamery Department, in the first processing of milk or cream into butter at its plant in Louisville, Kentucky, where all of the employees work, it is entitled to the complete exemption for all of said employees regardless of what type of work they may be engaged in. It points out that Armour Company actually churned from cream in its plant at 333 Byrne Street, Louisville, Kentucky, over $2,000,000 worth of butter in each of the three years in question, that its Creamery Department did over 58% of the Company's whole business, that the exemption does not require that the employer be engaged exclusively in the first processing of cream into butter, and since the major portion of its business is actually the first processing of cream into butter, without any attempt on its part to claim the exemption by subterfuge, it is entitled to the complete exemption for all employees at the place of employment where this work is carried on. This contention presents a strict and technical construction of the words used in Section 7(c) of the Act, which in the opinion of the Court is entirely inconsistent with the fundamental purpose of the Act and with the common sense interpretation which would have to be employed in dealing with any company en-

gaged in several various kinds of activities. Section 7(c) of the Act does not exempt industries as a whole from the overtime provisions of the Act, but only those specific processes therein mentioned. Fleming v. Swift & Co., supra; Walling v. Bridgeman-Russell Co. (D.C.Minn.) December 10, 1942;[1] Walling v. DeSota Creamery and Produce Co. (D.C.Minn.) April 27, 1943.[1]

The defendant further contends that although the Court might rule against the total exemption claimed yet the exemption would necessarily apply to such employees as were actually engaged in the first processing of cream into butter at the plant, under the provisions of Section 7(c) of the Act. Some of these employees may be exclusively engaged in such work; other of these employees devote part of their time during the week to such work and part of their time during the same week to other work at the plant. Such employees as devote their time exclusively to the first processing of cream into butter at the place of employment are entitled to the exemption. But with respect to cream which is churned elsewhere and brought into the plant in tubs in bulk, the work of the employees in dealing with this product is not the first processing of the cream as is required in order for the exemption to be applicable. Such employees as devote part of their time during the work week to duties other than the first processing of cream into butter are not exempted under the Act. Walling v. Swift, supra; Walling v. Bridgeman-Russell Co., supra. The work week appears to be the accepted unit of measurement with respect to the services of each employee. Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Travis v. Ray, D.C. W.D.Ky., 41 F.Supp. 6.

Defendant also claims that some of the plaintiffs are partially exempt from the operation of the Act because Section 7(c), dealing with overtime compensation, also provides that "in handling, slaughtering, or dressing poultry or livestock, the provisions of subsection (a), during a period or periods of not more than fourteen workweeks in the aggregate in any calendar year, shall not apply to his employees in any place of employment where he is so engaged." This exemption will apply for the 14-week period to such employees as were exclusively engaged in handling, slaughtering or dressing poultry, but it will not apply to operations which are not properly included within those terms. Some of the employees work in both the packing and dressing rooms. Part of the business of the poultry department is buying and handling live poultry and slaughtering and dressing it after it has been thus acquired. On the other hand, a great deal of the business of this department consists of poultry which had been slaughtered and dressed elsewhere. Also many of the employees perform such duties as packing, loading, grading or shipping after the poultry had been made edible and nonperishable. The definitions approved by the Court in Fleming v. Swift & Co., supra, dealing with live stock, are in the main equally applicable here. "Handling" refers to those operations that start when the plant takes possession of the live poultry and includes all the operations down to the slaughtering of the poultry. The term "slaughtering" constitutes the whole killing operations and ends when the animal life is extinct. The term "dressing" refers to the freeing of the body of feathers and matter not suitable for consumption, the evisceration of the carcass and all the operations performed upon the carcass after slaughtering and until they go to the coolers. Applying such definitions, it follows that the "handling, slaughtering or dressing" operations are concluded when the poultry is placed in the cooler, and that the phrase does not include packing, loading, grading or shipping. Such a construction of the phrase is consistent with the fundamental purpose of the exemption provided by the second half of Section 7(c) which contains the particular phrase under consideration. That part of the exemption deals with perishable or seasonal fresh fruits or vegetables, the first processing of agricultural commodities during seasonal operations, and the handling, slaughtering or dressing of poultry or live stock. The activities involved are affected to some extent by seasonal fluctuations with the products coming into the market in heavier quantities in some seasons of the year than at others, with the necessity that they be handled promptly regardless of the increased volume. Carrying out this theory of the exemption, the office of the Administrator has from the effective date of the Fair Labor Standards Act interpreted Section 7(c) as not applicable to employees of meat and poultry packers who performed

---

[1] No opinion for publication.

duties on the goods after they have been placed in the cooler. About two years after the effective date of the Act, Senator Clark introduced an amendment which would extend this exemption so as to include the grading and loading of poultry or live stock and the handling or transportation in connection with or incidental to such operations. This amendment was rejected by Congress which strongly supports the Administrator's interpretation previously placed upon it. Since employees whose work is in connection with poultry dressed prior to its receipt at the Louisville plant would not come within the exemption, and since employees who may be engaged in handling, slaughtering and dressing operations at the Louisville plant are in most instances also engaged in operations after the poultry has gone to the cooler, thus combining exempt and nonexempt operations, it follows that few, if any, of the employees in the poultry department would be exempt to any extent from the operation of the Act.

 Section 13(a) of the Act, 29 U.S. C.A. § 213(a) provides that neither the minimum wage or maximum hour provisions shall apply with respect to "any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesmen (as such terms are defined and delimited by regulations of the Administrator)". The defendant claims that certain "key men" or "working foremen" are executive or administrative officials within the meaning of this exemption provision. The Administrator has issued regulations defining these terms which may be found in Title 29, Chapter V, Code of Federal Regulations Part 541, issued in December 1940, Section 541.1 dealing with a bona fide executive, and Section 541.2 dealing with a bona fide administrative employee. An executive employee is therein defined as one whose primary duty consists of the management of the establishment in which he is employed, or if a recognized department thereof, who regularly directs the work of other employees therein, who has the authority to hire or fire other employees or whose recommendations as to hiring and firing or as to promotion or any other change of status of other employees will be given particular weight, and who customarily exercises discretionary powers, whose compensation is on a salary basis of not less than $30 per week, and

whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20% of the number of hours worked in the work week by the nonexempt employees under his direction. An administrative employee is therein defined as one who is compensated on a salary or fee basis of not less than $200 per month, and whose services are nonmanual in nature and require the exercise of discretion and independent judgment. These definitions have received judicial approval. Walling v. Sun Publishing Co., D.C.W.D.Tenn., 47 F.Supp. 180; Mantel v. Ralph Knight, Inc, D.C. W.D.Mo., 45 F.Supp. 372. The defendant does not attack the validity of the definitions but merely claims that several of its key men fall within their terms. However, the proof offered by the defendant on this issue falls far short of the necessary requirements. Defendant's brief stresses the importance of the work of various individuals whom it classifies as such executive and administrative employees, but fails to point out the evidence which would prove the amount or method of compensation, the authority to hire or fire or to recommend such action in any particular case, or what percentage of work the so-called key men performed of the same nature as that performed by other employees under their direction. Such testimony as does indirectly deal with these items fails to show the existence of the facts which are necessary in order to qualify under the definitions. Walling v. Emory Wholesale Corp., D.C. N.D.Ga., 49 F.Supp. 192.

 Section 13(a) (10) of the Act provides that neither the minimum wage or maximum hour provisions shall "apply to any individual employed within the area of production (as defined by the Administrator) engaged * * * in making cheese or butter or other dairy products." The Administrator's definition of area of production, released December 1940, as contained in Title 29 Chapter V Code of Federal Regulations Part 536, Section 536.2, is as follows: "An individual shall be regarded as employed in the 'area of production' within the meaning of section 13 (a) (10) * * * in making cheese or butter or other dairy products: (1) if he performs those operations on materials all of which come from farms in the general vicinity of the establishment where he is employed and the number of employees engaged in those operations in that establishment does not exceed seven." The defend-

ant contends that this definition is invalid in that the Administrator has arbitrarily and unreasonably restricted the exemption to operations in establishments where the number of employees does not exceed seven, and that after the definition is eliminated such employees as are engaged in making cheese or butter fall within the terms of the exemption. The validity of this definition has just been considered by this Court in its ruling in Walling, Administrator, v. McCracken County Peach Growers Association, 50 F. Supp. 900, decided June 15, 1943, wherein it was held that the definition was invalid. Fleming, Administrator, v. Farmers Peanut Co., 5 Cir., 128 F.2d 404; Clark v. Jacksonville Compress Co., 45 F.Supp.D.C. 43; Galiup v. Terrell Cotton Warehouse Co., D.C.N.D.Tex., May 29, 1941.[2] As was therein pointed out it is doubtful if this Court has the authority to strike out the invalid portion of the definition dealing with the number of employees and to apply the remainder, as probably the definition must stand or fall as a whole. But with the definition being declared invalid it follows that either the Court must formulate one for the purposes of this case or that the defendant fails to comply with the definition because none exists. If the authority exists for the Court to so define the term "area of production" for the purposes of this case, the Court adopts so much of the Administrator's definition as is not rejected by it as being in excess of the Administrator's authority, making the Court's definition read as follows: "If he performs those operations on materials all of which come from farms in the general vicinity of the establishment where he is employed." In either event, the employees of the defendant engaged in making cheese or butter do not qualify under the exemption.

For the purpose of answering certain specific questions presented by the pre-trial conference memorandum which may not be clearly answered by the foregoing rulings, the Court rules that employees transporting cream to the plant as well as those employed on the receiving dock and in pasteurizing and churning cream would be exempt in that they would be performing first processing operations or work so related thereto that it could not be segregated for practical purposes. This exemption, however, would not apply in weeks during which they performed other unrelated nonexempt duties. Likewise employees in the testing room testing only cream would also be exempt, but this exemption would not apply here in tests which were made on poultry or cheese manufactured elsewhere, in that this would not be the first processing operation on such products. Employees in the Print Room are not exempt during weeks when butter manufactured elsewhere was printed and placed in cartons. Employees in the Cheese Department are not engaged in the first processing of cream into dairy products since no cream is processed into cheese at the Louisville plant. Since only a small part of the duties of the shipping and maintenance employees deal with first processing operations, the exemption under Section 7 (c) of the Act would not apply to them.

After the parties hereto have determined by further proof or by stipulation the amount of recovery to which each plaintiff is entitled, judgment can be entered as the final order in the case.