COMMISSIONER OF CORPORATIONS AND TAXATION
& another *vs.* ASSESSORS OF BOSTON.

COMMISSIONER OF CORPORATIONS AND TAXATION
& another *vs.* ASSESSORS OF BOSTON.

Suffolk.   February 5, 1947. — February 28, 1947.

Present: FIELD, C.J., QUA, RONAN, & SPALDING, JJ.

*Taxation,* Personal property tax: machinery, exemption; *Manufacturing corporation. Corporation,* Manufacturing corporation. *Words,* "Manufacturing."

A domestic corporation operating a chain of retail food stores, a part of whose business was manufacturing in the production and preparation of bread, pastry, jams, jellies and other foods, and a foreign meat packing corporation, a part of whose business was manufacturing in the making of sausages, the curing and smoking of bacon and ham and the production of lard, were respectively a "domestic manufacturing corporation" within G. L. (Ter. Ed.) c. 63, § 38C, as appearing in St. 1937, c. 383, § 1, and a "foreign manufacturing corporation" within G. L. (Ter. Ed.) c. 63, § 42B, as appearing in St. 1937, c. 383, § 2, where such manufacturing by each corporation was substantial.

APPEALS from decisions by the Appellate Tax Board.

*E. L. Twomey, (J. A. Perkins* with him,) for Armour and Company, intervener.

*A. L. Hyland,* for First National Stores Inc., intervener.

*W. G. Perrin,* Assistant Attorney General, *(R. J. Cotter, Jr.,* Assistant Attorney General, with him,) for the Commissioner of Corporations and Taxation.

*W. H. Kerr, (S. Rosen,* Assistant Corporation Counsel, with him,) for the assessors of Boston.

RONAN, J.   The commissioner of corporations and taxation, acting under G. L. (Ter. Ed.) c. 58, § 2, as most recently amended by St. 1941, c. 726, § 2, forwarded to the board of assessors of the city of Boston a list of corporations known to him to be liable to taxation in the said city under G. L. (Ter. Ed.) cc. 59, 60A, 63, in which he classified as a domestic manufacturing corporation the First National Stores Inc., and as a foreign manufacturing corporation

Armour and Company. The board of assessors seasonably filed applications with the commissioner, stating that these classifications were incorrect and stating the kind of classification that should have been made. The commissioner having failed to act within twenty days, the board of assessors filed appeals from the classification of these corporations with the Appellate Tax Board. Each corporation was allowed to intervene in the appeal in which its classification was questioned. The Appellate Tax Board found that the First National Stores Inc. was a domestic business corporation, and that Armour and Company was a foreign business corporation. The commissioner and the First National Stores Inc. appealed in the first case, and the commissioner and Armour and Company appealed in the second case.

The Appellate Tax Board found that the First National Stores Inc. was a corporation organized under the laws of this Commonwealth, and that it conducted a general retail business selling food products in a number of retail stores throughout New England and in some parts of the State of New York. It owned and operated machinery for the baking of bread and pastry and the processing of food. It made preserves, jams, jellies, peanut butter, mayonnaise, extracts, bread, cake, and carbonated beverages, roasted coffee, prepared bacon and corned beef, manufactured sausages, and smoked hams. It sold these products together with similar products which it purchased from others. Live stock was bought, slaughtered and dressed in the corporation's plant. The corporation also maintained a plant for printing price tickets, inventory forms and books. A laundry was conducted for cleaning the coats worn by the clerks in its various stores and by employees in different departments. The gross sales for the year ending September 30, 1944, were $165,952,948, of which approximately $30,000,000 represented goods processed by the corporation, for the production of which it employed nine hundred forty-three persons. The assessors conceded that certain of these "activities performed by the First National Stores Inc. constitute manufacturing."

The Appellate Tax Board found that Armour and Company was incorporated under the laws of the State of Illinois. It had three usual places of business in Boston: one plant where shipments of carcasses sent by the corporation were received and cut up for dealers, hotels and restaurants, and where sausages were made, lard produced, and bacon and hams prepared; the second plant where operations similar to those conducted at the first plant were conducted with the exception of producing lard; and the third plant where leather soles were cut from hides, graded and shipped to shoe manufacturers. Besides, two plants were maintained at Worcester and Springfield for the making of sausages. The gross sales in 1944 from all these plants located in this Commonwealth amounted to $44,427,544, of which $18,-427,544 was derived from the sales of products processed in this Commonwealth, such as hams, sausages, lard, bacon and sole leather.

The only question presented in the first case is whether the Appellate Tax Board erred in deciding that the First National Stores Inc. should be classified as a "domestic business corporation" as defined in G. L. (Ter. Ed.) c. 63, § 30, and not as a "domestic manufacturing corporation" as defined in G. L. (Ter. Ed.) c. 63, § 38C, as appearing in St. 1937, c. 383, § 1, and in the second case is whether the board erred in deciding that Armour and Company should be classified as a "foreign corporation" as defined in G. L. (Ter. Ed.) c. 63, § 30, and not as a "foreign manufacturing corporation" as defined in G. L. (Ter. Ed.) c. 63, § 42B, as appearing in St. 1937, c. 383, § 2.

The adoption in 1916 of our present system of taxation of income precipitated a long and difficult struggle in this Commonwealth to discover a method of taxing national banks or their shareholders which would conform to the Constitution of the United States and to the acts of Congress. The history of legislation in an effort to accomplish this result is set forth in considerable detail in *Commissioner of Corporations & Taxation* v. *Woburn National Bank*, 315 Mass. 505. Congress by an amendment of March 25, 1926, to U. S. Rev. Sts. § 5219 (44 U. S. Sts. at Large, 223;

see now U. S. C. [1940 ed.] Title 12, § 548), authorized the imposition of a tax in one of four methods, one of which was upon the income of the banks provided "the rate shall not be higher than the rate assessed upon other financial corporations nor higher than the highest of the rates assessed by the taxing State upon mercantile, manufacturing, and business corporations doing business within its limits." The Legislature in 1930, acting in conformity with this act of Congress and in order to enable it to impose the highest rate in taxing the income of banks, separated manufacturing corporations from business corporations, and defined domestic manufacturing corporations and foreign manufacturing corporations. St. 1930, c. 220. By § 5 of said c. 220, a new section was added to G. L. c. 63 — § 38C — which, in so far as now material, provided that "Every corporation organized under or subject to chapter one hundred and fifty-six which is engaged in manufacturing shall, for the purposes of this chapter, be deemed to be a domestic manufacturing corporation." By § 7 of said c. 220, another new section was inserted in G. L. c. 63 — § 42B — which, in so far as now material, provided that "Every corporation, association or organization established, organized or chartered under laws other than those of the commonwealth, which has a usual place of business in the commonwealth and is engaged in manufacturing therein, shall, for the purposes of this chapter, be deemed a foreign manufacturing corporation." Both of these definitions have since continued, although the deduction allowed on account of the taxing of the machinery of manufacturing corporations as set forth in these two sections has since been changed. See St. 1937, c. 383, §§ 1, 2.

A radical change in the taxing of manufacturing corporations was effected by St. 1936, c. 362, § 1, which exempted the machinery of manufacturing corporations from local taxation by amending G. L. (Ter. Ed.) c. 59, § 5, Sixteenth. Clause Sixteenth as thus amended, in so far as it relates to the exemption from taxation of machinery owned by corporations, reads as follows: "property, other than real estate, poles, underground conduits, wires and pipes, and

other than machinery used in the conduct of the business, owned by domestic business corporations or by foreign corporations, as defined in section thirty of chapter sixty-three; also property, other than real estate, poles, underground conduits, wires and pipes, owned by domestic manufacturing corporations, as defined in section thirty-eight C of said chapter, or by foreign manufacturing corporations, as defined in section forty-two B of said chapter." Statute 1936, c. 362, § 2, amended G. L. (Ter. Ed.) c. 59, § 18, Second, so as to make it consistent with said clause Sixteenth as thus amended in so far as the taxation of machinery was concerned. As to the present form of G. L. (Ter. Ed.) c. 59, § 5, Sixteenth, see St. 1941, c. 467.

The assessors contend that neither of these corporations comes within these statutory definitions of manufacturing corporations. We must first inquire whether they were engaged in manufacturing in this Commonwealth. Manufacture ordinarily and commonly denotes the process of transforming raw or finished materials by hand or machinery, and through human skill and knowledge, into something possessing a new nature and name and adapted to a new use. *Commonwealth* v. *Green,* 253 Mass. 458. *Boston & Maine Railroad* v. *Billerica,* 262 Mass. 439. [1]

Doubtless, some of the transactions undertaken by the First National Stores Inc. constitute manufacturing. The assessors concede this to be true. The production of bread and pastry and the preparation and canning of jams, jellies and similar articles, already mentioned, are manufacturing operations. [2] The making of sausages, the curing and

---

[1] *Anheuser-Busch Brewing Association* v. *United States,* 207 U. S. 556. *American Fruit Growers, Inc.* v. *Brogdex Co.* 283 U. S. 1. *American Sumatra Tobacco Corp.* v. *Tone,* 127 Conn. 132. *Dolese & Shepard Co.* v. *O'Connell,* 257 Ill. 43. *Standard Tailoring Co.* v. *Louisville,* 152 Ky. 504. *H. M. Rowe Co.* v. *State Tax Commission,* 149 Md. 251. *People* v. *Morgan,* 61 App. Div. (N. Y.) 373. *Red Hook Cold Storage Co. Inc.* v. *Department of Labor of New York,* 268 App. Div. |(N. Y.) 11. *Engle* v. *Sohn & Co.* 41 Ohio St. 691. *Commonwealth* v. *Weiland Packing Co.* 292 Pa. 447.

[2] *Phillips* v. *Byers,* 189 Cal. 665. *H. H. Kohlsaat & Co.* v. *O'Connell,* 255 Ill. 271. *Nixa Canning Co.* v. *Lehmann-Higginson Grocer Co.* 70 Kans. 664. *Louisville* v. *Zinmeister & Sons,* 188 Ky. 570. *State* v. *Lanasa,* 151 La. 706. *State* v. *E. I. Young Co. Inc.* 157 La. 845. *County Commissioners of Carroll County* v. *B. F. Shriver Co.* 146 Md. 412. *American Glucose Co.* v. *State,* 16 Stew. (N. J.) 280. *Commonwealth* v. *Snyder's Bakery,* 348 Pa. 308.

smoking of bacon and ham, and the making of lard have been held by the weight of authority to be manufacturing. [1] The printing of books and pamphlets, but not the printing of newspapers, has been decided to be manufacturing. [2] The laundering of soiled clothing is not a manufacturing process, and there is considerable uncertainty whether the cutting of soles from hides considered by itself constitutes manufacturing. [3] Even if some of the activities, such as the maintenance of a printing plant and laundry and the cutting of soles, are disregarded, yet the regular performance of many activities by these corporations in the usual course of business must be considered as manufacturing, and demonstrates that they were engaged in manufacturing as provided in said §§ 38C and 42B.

The assessors urge that it was not intended that a meat packing corporation and a retail chain store corporation should be deemed to be manufacturing corporations where whatever manufacturing they do is merely incidental to their main business, which is of a nonmanufacturing nature. We are not concerned with how these corporations may be regarded for some general purpose, because the Legislature has set up the particular standards by which they are to be classified as manufacturing or nonmanufacturing corporations for the single purpose of determining whether they are entitled to the exemption from local taxation upon their machinery.

The object of St. 1936, c. 362, § 1, was to encourage manufacturing in this Commonwealth by removing the burden of local taxation upon the machinery, and by substituting therefor a tax at the rate of $5 per thousand in the assessment of the corporate franchise tax. It was

---

[1] *Engle* v. *Sohn & Co.* 41 Ohio St. 691. *Neuhoff Packing Co.* v. *Sharpe*, 146 Tenn. 293. *J. H. Allison & Co.* v. *Killough*, 156 Tenn. 294. *Morris & Co. Inc.* v. *Commonwealth*, 116 Va. 912. *Commonwealth* v. *Meyer*, 180 Va. 466. But see *Commonwealth* v. *Weiland Packing Co.* 292 Pa. 447.

[2] *Barron* v. *Boston*, 187 Mass. 168. *Seeley* v. *Gwillim*, 40 Conn. 106. *Lexington* v. *Lexington Leader Co.* 193 Ky. 107. *American Newspapers, Inc.* v. *State Tax Commission*, 174 Md. 56. *Evening Journal Association* v. *State Board of Assessors*, 18 Vroom, 36. *Commonwealth* v. *J. B. Lippincott Co.* 156 Pa. 513.

[3] *Commonwealth* v. *Keystone Laundry Co.* 203 Pa. 289.

apparently thought that this exemption would check the decrease in manufacturing which had for years been in progress, and that this change in taxation might attract new manufacturing to this State.[1]

The Legislature in designating the corporations entitled to this exemption did not limit it to corporations that were organized exclusively for or wholly engaged in manufacturing, or to those having a certain percentage of their capital invested in manufacturing, or to those whose manufacturing operations comprised a certain proportion of their entire business, as was provided for in the statutes of other jurisdictions — see 10 Am. L. R. 1273 — but our Legislature adopted the classification made in St. 1930, c. 220, §§ 5, 7, inserting §§ 38C and 42B in c. 63 of the General Laws, appearing since in G. L. (Ter. Ed.) c. 63, §§ 38C, 42B. The exemption was granted to every domestic and foreign corporation which was engaged in manufacturing in this Commonwealth. This does not mean that every corporation, which in the conduct of its business manufactures to a trivial extent something used in aid of a business which is essentially of a nonmanufacturing character, is entitled to this exemption from the local tax on machinery. A garment cleansing corporation that prepares its own cleaning solvent, a laundry corporation that manufactures its own soap, and a hotel corporation that makes its own furniture polish are not manufacturing corporations. It would be impracticable to draft a statute that would classify each particular corporation, and the matter was left to the commissioner in the first instance to determine the classification of each corporation.

We do not agree with the contention of the assessors that the manufacturing operations of a corporation must comprise its principal business before it may be properly classified as a manufacturing corporation. The statutory definitions do not in terms or by necessary implication so

---

[1] The economic situation existing in 1936 due to the decline in manufacturing in this Commonwealth is described in the report of the recess commission (House Document No. 143 of 1936). Statute 1936, c. 362, was enacted pursuant to this report.

provide.[1] The words of §§ 38C and 42B are direct and plain and must be given their usual and ordinary meaning. That the definitions of manufacturing corporations in these two sections were not intended to be restricted or confined is confirmed by the object and aim of the statute granting the exemption, G. L. (Ter. Ed.) c. 59, § 5, Sixteenth, as amended, which adopted these definitions in an attempt to stimulate manufacturing in this Commonwealth. We cannot read into these definitions any words restricting them to corporations whose principal business is manufacturing.[2]

Corporations whose manufacturing operations are substantial, whether viewed with respect to the financial receipts they bring to the corporation, or the proportion of the entire corporate income that they comprise, or the percentage of the entire capital which is invested in them, or the number of persons employed in them as compared with the total number of employees of the corporations, or the ratio to the entire business activities of the corporation, must be regarded as manufacturing corporations within our statutory definitions specifying those that are exempted from local taxation of their machinery. Upon the facts found by the Appellate Tax Board, the corporations in question were entitled to be classified as manufacturing corporations, as they were by the commissioner, and in each case the decision must be for the commissioner.

*So ordered.*

---

[1] It may be noted that the early draft of House Bill No. 714 of 1930, which finally became St. 1930, c. 220, defined domestic and foreign manufacturing corporations as those whose principal business was manufacturing, and that this qualifying clause was struck out.

[2] *See* v. *Building Commissioner of Springfield,* 246 Mass. 340. *Arruda* v. *Director General of Railroads,* 251 Mass. 255. *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148. *Liddell* v. *Standard Accident Ins. Co.* 283 Mass. 340, 347. *Hanlon* v. *Rollins,* 286 Mass. 444, 447. *Gallagher* v. *Wheeler,* 292 Mass. 547. *Attorney General* v. *J. P. Cox Advertising Agency, Inc.* 298 Mass. 383. *Kennedy* v. *Consolidated Motor Lines, Inc.* 312 Mass. 84, 87. *West's Case,* 313 Mass. 146.