BALLARD'S FARM SAUSAGE, INC.

*v.*

RICHARD L. DAILEY, *etc.*

THOMAS R. GOODWIN,

*W. Va. Tax Commissioner*

(No. 14025)

W. VA. SAUSAGE CO.

*v.*

RICHARD L. DAILEY, *etc.*

THOMAS R. GOODWIN,

*W. Va. Tax Commissioner*

(No. 14026)

Decided July 11, 1978.

*Chauncey H. Browning*, Attorney General, *C. Page Hamrick III*, Special Assistant Attorney General, for appellant.

*Robert H. C. Kay, Kay, Casto & Chaney* for appellee W. Va. Sausage Co.

*Menis E. Ketchum, Greene, Ketchum & Mills* for appellee Ballard's Farm Sausage.

NEELY, JUSTICE:

The issue presented in these cases is the proper Business and Occupation Tax rate applicable to the production of sausage and salads made by the taxpayers, appellees, Ballard's Farm Sausage, Inc. and West Virginia Sausage Company. Until April 1, 1971 both taxpayers reported under the manufacturing classification but have since reported under wholesaling. The State Tax Commissioner assessed deficiencies due to the changes in reporting. The taxpayers petitioned for reassessment; hearings before the State Tax Commissioner were held; administrative decisions of the Tax Commissioner were issued affirming the assessments; both taxpayers appealed to circuit court (Ballard's Farm Sausage to Wayne County Circuit Court and West Virginia Sausage Company to Mason County Circuit Court); and both circuit courts reversed the decision of the Tax Commissioner. We affirm.

The controversy centers around the proper construction of *W.Va. Code*, 11-13-2b [1974] which establishes the manufacturing rate classification. As originally enacted in 1935, *Code*, 11-13-2b applied "Upon every person engaging or continuing within this State in the business of manufacturing, compounding or preparing for sale, profit, or commercial use ..." In 1951, the Legislature add-

ed a proviso; "However, the dressing and processing of poultry and turkeys by a person, firm or corporation . . . shall not be considered as manufacturing or compounding, but the sale of these products on a wholesale basis shall be subject to . . ." the wholesaling rate classification. *Acts of the Leg.*, Reg. Sess., 1951, C. 179. In 1971, the Legislature amended *Code*, 11-13-2b again, effective April 1, 1971, substituting "food" for "poultry and turkeys." *Acts of the Leg.*, Reg. Sess., 1971, C. 169. The statute currently reads as follows:

> Upon every person engaging or continuing within this State in the business of manufacturing, compounding or preparing for sale, profit, or commercial use, either directly or through the activity of others in whole or part, any article or articles, substance or substances, commodity or commodities, .. the amount of the tax to be equal to the value of the article, . . . multiplied by a rate of eighty-eight one hundredths of one percent. . . . However, the dressing and processing of food by a person, firm or corporation, which food is to be sold on a wholesale basis by such person, firm or corporation shall not be considered as manufacturing or compounding, but the sale of these products on a wholesale basis shall be subject to the same tax as is imposed on the business of selling at wholesale as provided in section two-c [§ 11-13-2c].

Taxpayers contend they fall within the "dressing and processing" proviso and can report under the wholesaling rate while the Tax Commissioner contends that taxpayers' operations are manufacturing. In 1974, the Tax Commissioner promulgated regulations under *W.Va. Code*, 11-13-2b [1974] which provide that:

> Persons who dress and process food which is to be sold on a wholesale basis by such person shall not be considered as manufacturing or compounding for the purposes of the business and occupation tax law. The sale of these food products on a wholesale basis shall be subject to the

tax imposed under the wholesale classification only.

The term "dressing and processing" shall mean slaughtering, butchering and breaking down of poultry, meat, fish, fowl and other foods into composite parts but does not include the preparation of these parts into new or different products or substances. To illustrate: slaughtering and butchering swine into pork chops, pork roast, pork liver, pork brains, etc. will qualify as dressing and processing of food. *If composite parts of swine are mixed, ground or cooked and have other ingredients, such as condiments, added thereto, to make a new or different product, such as pork sausage, such procedure is more than merely dressing and processing of food and the income therefrom is subject to the manufacturing classification.* Therefore, preparation of luncheon meats, such as, bologna, salami, ham salad spread, liverwurst, etc., must be reported under the manufacturing classification when sold by the person who prepared the same.

. . . .

Any food item which is dressed and processed and is sold at retail is treated as a manufactured product, and the income therefrom must be reported under the retail classification and the manufacturing classification. Persons who dress and process food are relieved from reporting the sale of such food under the manufacturing classification only if such food is sold on a wholesale basis.

W. Va. Business and Occupation Tax Regulations § 1.2b ¶ 76-506(D) (1974). [emphasis added]

We find the Commissioner's regulation to be inconsistent with the statute. The Commissioner argues that taxpayers are manufacturing, but we find that even assuming that they are, if they are also dressing and processing food to be sold at wholesale, they come under the wholesaling proviso. If the dressing and processing of food were not also manufacturing the proviso would not

be necessary. The proper inquiry is whether the appellees' operations in the preparation of sausage and salads are "dressing and processing of food." We find that they are.

The Commissioner's error has been that he has considered "dressing and processing" and "manufacturing" mutually exclusive. We need not resort to dictionaries or complex semantics to recognize that many operations are styled in common speech as either "manufacturing" or "processing" interchangeably. Obviously, the more capital intensive and industrial a transformation operation is, the more likely it is to be called "manufacturing," while the more labor intensive or pastoral a transformation operation is, the more likely it is to be called "processing." Thus, one almost always speaks of the "manufacturing" of steel while conversely one almost always speaks of the "processing" of cheese. In normal speech, however, many transformation operations, such as converting trees into usable lumber, are referred to interchangeably as either "processing" or "manufacturing." Thus, while at the extreme ends of the industrial-agricultural spectrum either one or the other word is almost uniformly used to describe the particular operation in question, in the middle there are numerous operations which can be considered both.[1]

---

[1] The following cases attempting to make a distinction between "processing" *vis a vis* "manufacturing" demonstrate the inherently result-oriented nature of legal definition, as well as the lack of any but an artificial distinction between the two:

*East Texas Lines v. Frozen Food Exp.*, 351 U.S. 49 (1955) (Killing and dressing chickens is "processing," not "manufacturing" under the Interstate Commerce Act); *Corn Products Refining Co. v. Federal Trade Commission*, 324 U.S. 726 (1945) (Conversion of dextrose into candy is "processing" under the Clayton Act); *Cochrane v. Deener*, 94 U.S. 780 (1876) (Certain treatment of flour is a "process" that can be patented); *Mitchell v. Oregon Frozen Food Company*, 264 F.2d 599 (9th Cir. 1958) (under Fair Labor Standards Act no "processing" takes place until a change takes place); *Bowie v. Gonzales*, 117 F.2d 11 (1st Cir. 1947) (Grinding and preparing sugar cane is the "processing," not the production of, an agricultural product); *United States v. Bodine Produce Co.*, 206 F. Supp. 201 (D. Ariz. 1962) (dicta) (Changing apples into applesauce or pork into

The making of plastic from soybeans is clearly not the "dressing and processing of food" but the pasteurization of milk clearly is. It is impossible to articulate at what point an operation becomes more than dressing and processing. As stipulated by counsel, the Tax Commissioner treats the perparation of turkeys injected with butter and the cutting of chickens into parts which are dipped in batter and frozen as dressing and processing. We fail to see any reasons to distinguish the making of sausage and salads from those similar operations involving poultry.[2]

Given the impossible task of clearly distinguishing the "dressing and processing of food" from the "manufacturing" of food, we look to the time-honored maxim that taxing statutes will be strictly construed against the State and in favor of the taxpayer,[3] *Baton Coal Company v. Battle*, 151 W. Va. 519, 153 S.E.2d 522 (1967); *State ex. rel. Battle v. B. & O. R.R. Co.*, 149 W. Va. 810, 143 S.E.2d 331 (1965); *State v. Carman*, 145 W. Va. 635, 116 S.E.2d 265 (1960), and find that appellees' operations are within the dressing and processing proviso. Simply stated, if a taxpayer begins with what is usually considered

sausage is "processing" under the Federal Food Act); *Prentice v. City of Richmond*, 197 Va. 724, 90 S.E.2d 839 (1956) (Killing, cleaning and chilling chickens is not "manufacturing" exempt from license tax on merchants); *Commissioner of Corporations and Taxation v. Assessors of Boston*, 321 Mass. 90, 71 N.E.2d 874 (1947) (Production of sausage is "manufacturing" and exempt from municipal tax on machinery); *Commonwealth v. Weiland Packing Co.*, 292 Pa. 447, 141 A. 148 (1928) (Producer of pickled and smoked meats not a "manufacturer" exempt from merchants' license tax.)

[2] Taxpayers' sausage operations consist of purchasing, slaughtering, skinning, viscerating, boning, cooling and butchering swine. The meat used in sausage is then ground and blended with spices to be packaged.

The preparation of salads is simple: the ingredients are purchased, prepared, mixed and packaged.

[3] The exception to the general rule of strict construction against tax imposition where the taxpayer is claiming an exemption from taxation, *Owens-Illinois Glass Co. v. Battle*, 151 W. Va. 655, 154 S.E.2d 854 (1967) does not apply here since the taxpayers are not claiming an exemption but are merely contesting the rate classification.

a food substance and ends with a food product, he is dressing and processing food for the purposes of *W.Va. Code*, 11-13-2b [1974].

*Affirmed.*

MILLER, JUSTICE, *concurring:*

Although I concur in the result reached by the majority that the making of sausage constitutes the dressing and processing of food, I believe the Court has formulated an overly broad test. A narrower test is warranted under the statutory language, but even under the narrower test sausage making would be the processing of food.

The problem can best be illustrated by starting with the majority's criticism of the State Tax Commissioner's interpretation of the applicable statutory language:

> "The Commissioner's error has been that he has considered 'dressing and processing' and 'manufacturing' mutually exclusive." [W. Va. at, S.E.2d at, Majority Opinion at 3-4]

The majority then proceeds to commit error in the opposite direction by concluding that the terms "dressing and processing" and "manufacturing" are virtually synonymous, with the result that the third syllabus states:

> "If a taxpayer begins with what is usually considered a food substance and ends with a food product, he is dressing and processing food for the purposes of *W. Va. Code*, 11-13-2b [1974]."

Interpreting statutory law involves a careful analysis of the language utilizing fundamental legal principles of statutory construction. It is not merely a matter of substituting one's own judgment of economic or social theory to determine *sua sponte* what the statute means.

This Court summarized and applied some of the traditional rules for interpreting a statute in *Wooddell v. Dailey*, W. Va., 230 S.E.2d 466 (1976). There, the issue was whether an interior decorator was exempt from paying consumer sales and service taxes under the pro-

fessional exemption set out in W.Va. Code, 11-15-8. The Court concluded the taxpayer was not entitled to the exemption.

Several rules set out in *Wooddell* have direct applicability to the present case:

> "Effect should be given to the spirit, purpose and intent of the lawmakers without limiting the interpretation in such a manner as to defeat the underlying purpose of the statute; . . . Each word of a statute should be given some effect and a statute must be construed in accordance with the import of its language; . . . Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning; . . ." [W. Va. at, 230 S.E.2d at 469]

*Wooddell* also recognized that tax statutes are strictly construed against the taxing authority and in favor of the taxpayer, but noted that where an exemption is provided in a tax statute such "exemption is strictly construed against the person claiming the exemption." [W. Va. at, 230 S.E.2d at 469]

W.Va. Code, 11-13-2b, establishes a broad category for the imposition of a business and occupation tax on the "business of manufacturing, compounding or preparing for sale" any article, substance or commodity. The proviso on which this case centers permits "the dressing and processing of food" to be taxed at the reduced wholesale tax rate in lieu of the manufacturing rate.

It is apparent that if the Legislature had intended to confer the reduced rate on all businesses engaged in "manufacturing, compounding or preparing" food, as now suggested by the majority opinion, it would have placed this broader language in the proviso. Instead, it chose to use the term "dressing and processing of food" in the proviso. One can only conclude that the choice of this language in the proviso was deliberate and manifested the Legislature's intention not to except all food manufacturers from the manufacturing business and occupation tax rate.

I do not believe that differentiating between the term "manufacturing" and the concept of "dressing and processing" is impossible, as suggested by the majority. The term "dressing" is a technical term as applied to a food product and essentially relates to the freeing of the animal carcass from matter not suitable for human consumption. *Fleming v. Swift & Co.*, 41 F. Supp. 825 (D.C. Ill. 1941), *aff'd*, 131 F.2d 249 (7th Cir. 1942); *Shain v. Armour & Co.*, 50 F. Supp. 907 (D.C. Ky. 1943).

"Processing" of food is an ambiguous term. It is sometimes used conjunctively with the term "manufacturing" in the statutes, and in such case the courts will construe it as being synonymous with the term "manufacturing." *Gressel Produce Co., Inc. v. Kosydar*, 34 Ohio St.2d 206, 297 N.E.2d 532 (1973); *Pellerin Laundry Machinery Sales Co. v. Cheney*, 237 Ark. 59, 371 S.W.2d 524 (1963).

Here, however, the term "processing" is not used conjuctively with "manufacturing," but separately to establish an independent category in the proviso clause. Under the rule that an exemption clause in a tax statute is construed narrowly against the one claiming the exemption, we are warranted in adopting a narrow construction of the term "processing." This also accords with the Legislature's intent, as previously noted, since the broad term "manufacturing" was not used in the exemption clause, but instead the word "processing" was chosen.

The term "processing" has been recognized as a subcategory of the larger term "manufacturing" in *East Texas Motor Freight Lines v. Frozen Food Express*, 351 U.S. 49, 100 L. Ed. 917, 76 S.Ct. 574 (1956), where the issue was whether poultry which had been dressed and frozen was a manufactured product of an agricultural commodity. The Court, in concluding it was not a manufactured product, stated:

> "At some point processing and manufacturing will merge. But where the commodity retains a continuing substantial identity through the processing stage we cannot say that it has been

'manufactured' . . ." [351 U.S. at 54, 100 L. Ed. at 924]

It also relied on its earlier definition of the term "manufacturing" where it stated:

"The Court in Anheuser-Busch Brewing Asso. v. United States, 207 US 556, 562, 52 L ed 336, 338, 28 S Ct 204, in a case arising under the tariff laws, said,

" '. . . Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary, as set forth and illustrated in Hartranft v Wiegmann, 121 US 609. There must be transformation; a new and different article must emerge, "having a distinctive name, character or use." ' " [351 U.S. at 53, 100 L. Ed. at 923]

The Virginia Court, in *Prentice v. City of Richmond*, 197 Va. 724, 90 S.E.2d 839 (1956), considered at some length the question of what constitutes manufacturing in regard to food products. It approved of the following general test:

"In general the more comprehensive definitions recognize three essential elements involved in manufacturing: (1) original material referred to as raw material; (2) a process whereby the raw material is changed; and (3) a resulting product which, by reason of being subjected to the processing, is different from the original raw material. The conflict in the authorities results largely in the different viewpoints as to the degree of change necessary to satisfy the third requirement. It may be said, however, that mere manipulation or rearrangement of the raw materials is not sufficient; there must be a substantial, well-signalized transformation in form, quality and adaptability . . ." [90 S.E.2d at 843]

There can be no doubt that processing involves some transformation of the original product. Where the transformation is substantial in the form, quality and ingredi-

ents of the end product, it is deemed manufactured. A less substantial change marks the processing category.

Here, the original raw material, pork, has been changed by reducing its size and adding certain condiments. I do not believe there has been that substantial an alteration of form, quality and ingredient which would elevate the work done on the product to the manufacturing level.

While there is no bright line between what is a manufactured as distinguished from a processed food product, this does not mean that the two categories cannot be generally separated. The fact that a given food product may present characteristics of both categories does not mean that we should abandon any attempt to define the terms and treat them as synonymous when they are not.

I cannot help but feel that the loose language in the third syllabus was unintended and that this Court does recognize the difference in the terms. The majority opinion should not be read as an open invitation to all those who are engaged in the manufacturing of food products to claim the processing exemption.