370 S.E.2d 117

**GENERAL MOTORS CORPORATION**

v.

**Herschel H. ROSE, III, Tax Commissioner, etc.**

**17161.**

Supreme Court of Appeals of West Virginia.

Dec. 2, 1987.

Rehearing Refused Feb. 3, 1988.

Dissenting Opinion June 28, 1988.

Charles G. Brown, Atty. Gen., Mary Carol Holbert, Asst. Atty. Gen., Tax Div., for appellant.

Michael D. Foster, Charleston, for appellee.

NEELY, Justice:

General Motors manufactures automobiles which it then sells through a network of independent West Virginia dealers. When a consumer purchases a General Motors vehicle, the sales contract includes a one year or 12,000 mile warranty that the vehicle will be free from manufacturing defects. As a condition of the franchise agreement, dealers must undertake to perform warranty work for the manufacturer in fulfillment of the manufacturer's factory warranty. Dealers are paid by General Motors for the parts and labor involved in warranty work. Repairs and service adjustments required because of misuse, negligence, alteration, accident, or lack of specified maintenance are not covered under the factory warranty, nor are the replacement items, such as spark plugs, filters, brake pads and linings, and clutch discs, made in connection with normal maintenance services. In addition, tires are not covered under the factory warranty because General Motors does not manufacture the tires placed on its vehicles.

Although General Motors manufactures vehicles of high quality, manufacturing defects inevitably appear in most vehicles.

Because it is either impossible or uneconomical to detect all defects at the manufacturing plant or even at the dealership, General Motors provides its warranty as an integral part of the overall manufacturing process. An obligation on the part of General Motors to repair, adjust, and replace defective parts in a vehicle for one year or 12,000 miles is a valuable and significant part of the sales contract; furthermore, the warranty is a major item of expense in the consumer's overall purchase price. A privilege tax, exactly equal in amount to the consumer's sales tax, is paid on both the value of the vehicle and the value of the warranty at the time of purchase. That tax, of course, is simply measured by the purchase price of the car less trade-in.[1]

On 14 December 1976 the State Tax Commissioner issued Consumers Sales and Service Tax Memorandum Ruling No. 76–4, which stated that work performed by an automobile dealer in discharge of a manufacturer's factory warranty is a taxable incident under the consumer sales and service tax. As a result of this ruling tax deficiencies were assessed against General Motors from 1 February 1977 through the end of the audit period, 30 June 1977. After an administrative hearing the tax commissioner reaffirmed the assessment and General Motors appealed to the Circuit Court of Kanawha County. On 17 July 1985 the circuit court reversed the commissioner and held that warranty work performed by dealers and paid for by General Motors is exempt under *W. Va. Code*, 11–15–9(6) [1974].[2] That section of the *Code* provided the following exemption:

"[S]ales of property or services to persons engaged in this state in the business of contracting, manufacturing, transpor-

tation, transmission, communication, or in the production of natural resources: Provided however, that the exemption herein granted shall apply only to services, machinery, supplies and materials *directly* used or consumed in the business or organizations named above;" [Emphasis supplied by Court]

The tax commissioner now appeals the circuit court's ruling here on the grounds that the circuit court erred by not holding that to qualify for the *Code*, 11–15–9(6) [1974] exemption, General Motors must show that the replacement parts and repair services purchased by it to fulfill its warranty obligations were used *directly* in the business of manufacturing. We agree with the circuit court and affirm.

In his brief before this Court, the tax commissioner admits that "General Motors makes any needed service adjustments during the first 90 days of use as determined by a dealer road test, where applicable. Warranty repairs and needed service adjustments are performed without charge to the owner by the franchise dealer at its place of business." Furthermore, the tax commissioner does not challenge General Motors' basic contention, which is that warranty repairs, replacements, and adjustments are an integral part of providing high quality, reliable automobiles to consumers. The commissioner's objection to the circuit court's holding is that in order to qualify for the exemption, the sales of property or services must be made to persons "directly" engaged in manufacturing.

We reject this contention for two reasons: First, even the commissioner agrees that warranty work is an integral part of the overall manufacturing activity of delivering a serviceable car to the consumer.

---

1. The privilege tax on the transfer of a vehicle title is in an amount equal to the consumers' sales tax. However, unlike the consumer's sales tax, there is no exemption from the privilege tax for isolated sales outside the normal course of business as is found in *W. Va. Code*, 11–15–9(h) [1987] under the consumers' sales tax. Motor vehicle sales are exempted from the 5 percent consumers' sales tax by *Code*, 11–15–9(d) [1987] when a tax is imposed under the privilege tax, *Code*, 17A–3–4 [1983]. The privilege tax is but a sales tax by another name.

2. At issue in this appeal is *W. Va. Code*, 11–15–9(6) [1974] as it existed during the assessment period in this case (February 1977 through June 1977). The applicable language in *Code*, 11–15–9(6) was renumbered in 1983 to *Code*, 11–15–9(7) without substantive amendment. *Acts of the Legislature, Regular Session, 1983*, Chapter 179. In 1987 *Code*, 11–15–9(7) [1983] was substantially amended. The current code section that corresponds to the exemptions in this case is *W. Va. Code*, 11–15–9(g) [1987].

Second, regardless of who the nominal payor of the consumers sales tax is, and in this case it would be General Motors if we accepted the commissioner's argument, the ultimate payor is the consumer. But the consumer has already paid a 5 percent privilege tax under *W.Va.Code,* 17A–3–4 [1973], on *both* the vehicle as delivered from the factory with all of its inchoate imperfections, *and* the valuable warranty right to have General Motors repair the vehicle's imperfections when they become manifest without cost during the first year or 12,000 miles.[3] If we were to accede to the commissioner's argument, we would simply tax the consumer twice in a situation where the legislature intended that he be taxed only once. We believe that confounds common sense, good public policy, the plain words and meaning of *Code,* 11–15–9(6) [1974], and the intent of the legislature. Therefore, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

MILLER, Justice, dissenting:

I respectfully dissent from the Court's opinion for several reasons. First, I believe the majority opinion inaccurately characterizes the Tax Commissioner's position. The Tax Commissioner did not argue that sales of property or services must be made to persons "directly" engaged in manufacturing. Rather, he contended throughout these proceedings that in order for General Motors Corporation (GM) to qualify for the sales tax exemption, the warranty parts and services it purchased from its dealers had to be "directly used or consumed" by it in its business of manufacturing. The purchases at issue occurred months after the cars rolled off the assembly line and had been purchased by dealers and resold to customers. The warranty parts were then purchased by the dealers and installed on the cars.

The Tax Commissioner cogently argued, I thought, that GM's manufacturing business had already ended by the time its dealers provided the warranty parts and services and, therefore, such parts and services were not directly used or consumed in GM's manufacturing business. The Court did not address, let alone refute, this argument. Nor does the Court even attempt to distinguish the decisions of other courts, particularly Ohio, which support the position that GM is not entitled to the exemption because the warranty parts and services were not "directly used or consumed" in its manufacturing business, as required by W.Va.Code, 11–15–9(6).

In *Southwestern Portland Cement Co. v. Limbach,* 35 Ohio St.3d 196, 197, 519 N.E.2d 831, 833 (1988), the Supreme Court of Ohio reiterated the following test from the Syllabus of *Youngstown Bldg. Material & Fuel Co. v. Bowers,* 167 Ohio St. 363, 5 O.O.2d 3, 149 N.E.2d 1 (1958), to determine what purchases the legislature intended to exempt from the sales tax as being directly used in the business of manufacturing:

"In determining whether tangible personal property is used or consumed directly in the production of tangible personal property for sale by manufacturing or processing, and, therefore, whether its sale or use is excepted from taxation under ... [the statute] ..., the test is not whether such property is essential to the operation of an 'integrated plant;' the test to be applied being, *when* does the actual manufacturing or processing activity begin and end, and is the property used or consumed *during and in the manufacturing or processing period.* (Emphasis added)."

*See generally* Annot., 4 A.L.R.4th 581 (1981); Annot., 30 A.L.R.2d 1439 (1953).

Furthermore, the majority fails to give any recognition to the applicable canons of statutory construction. The entire claim of GM centers on an exemption clause contained in the then-existing tax statute, W.Va.Code, 11–15–9(6) (1974).[1] It is an

---

3. *W.Va.Code,* 17A–3–4 [1973] is now *W.Va.Code,* 17A–3–4 [1983] but the amendments have not modified the statute in any fashion that would disturb the result in this case.

1. The pertinent language·of W.Va.Code, 11–15–9(6) (1974), is:

"[S]ales of property or services to persons engaged in this state in the business of con-

accepted tax law principle in this jurisdiction that an "exemption is strictly construed against the person claiming the exemption." *Wooddell v. Dailey,* 160 W.Va. 65, 68, 230 S.E.2d 466, 469 (1976). Furthermore, the Tax Commissioner's interpretation of the exemption statute should have been accorded considerable weight, under the established administrative law principle stated in Syllabus Point 1 of *Dillon v. Board of Educ. of County of Mingo,* 171 W.Va. 631, 301 S.E.2d 588 (1983): " 'Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.' Syllabus Point 4, *Security National Bank & Trust Co. v. First W.Va. Bancorp., Inc.,* [166] W.Va. [775], 277 S.E.2d 613 (1981), appeal dismissed, 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 [ (1982) ]." *See also Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975); *Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975).

I submit that if the undefined words of the exemption statute are given their common, ordinary, and accepted meaning, as required by the rules of statutory construction, *e.g.,* Syllabus Point 6, *State ex rel. Cohen v. Manchin,* 175 W.Va. 525, 336 S.E.2d 171 (1984), the Tax Commissioner's position must be upheld. The phrase "directly used or consumed" in the manufacturing business cannot reasonably be defined to include the installment of warranty parts by GM's dealers. Nor can warranty parts and service come within any established judicial definition of "manufacturing," which generally denotes the making of something new. *See Ballard's Farm Sausage, Inc. v. Dailey,* 162 W.Va. 10, 19, 246 S.E.2d 265, 270 (1978) (Miller, J., concurring).[2] In my judgment, the Tax Commissioner's interpretation and application

of the exemption statute was not clearly erroneous.

The majority's economic policy arguments are not at all persuasive to me. Formulation of tax policy is conspicuously a legislative function. Facile economic arguments certainly do not justify a judicial rewriting and liberalization of the exemption provision.

I, therefore, dissent.

---

tracting, manufacturing, transportation, transmission, communication, or in the production of natural resources: Provided, however, That the exemption herein granted shall apply only to services, machinery, supplies and materials *directly used or consumed* in the business of organizations named above[.]" (Emphasis added).

**2.** W.Va.Code, 11–15–2(p) (1987), presently defines "manufacturing" as follows: " 'Manufacturing' shall mean a systematic operation or integrated series of systematic operations engaged in as a business or segment of a business which transforms or converts tangible personal property by physical, chemical or other means into a different form, composition or character from that in which it originally existed."