MORLEY, COMMISSIONER OF REVENUES *v.* BROWN & ROOT, INC.

4-9509 239 S. W. 2d 1012

Opinion delivered June 4, 1951.

*O. T. Ward* and *H. Maurice Mitchell,* for appellant.

*House, Moses & Holmes* and *William M. Clark,* for appellee.

PAUL WARD, J. Appellees are a group of contractors, operating under the name of Ozark Dam Constructors, and are and have for some time been engaged in constructing Bull Shoals Dam on White River in Marion County, Arkansas. Necessary to the operation of a project of such magnitude they have large quantities of equipment consisting of locomotives, tracks, conveyors, cranes, bulldozers and machinery for the preparation of concrete, etc. In order to carry on their operations and to keep this vast amount of equipment in repair, and to supply their men with tools and accessories, they are required to make numerous purchases from time to time. Many of the purchased items come from outside the State of Arkansas. During the month of April, 1949, they purchased 85 such items of personal property, all from outside the State and the total purchase price amounted to $35,799.83.

Appellant, the Commissioner of Revenues for Arkansas, took the position that appellees were obligated under Act 487 of 1949, to pay the two per cent Use Tax on all of said purchases, which tax amounted to $716. Appellees paid the tax to the Commissioner, under protest, as the Act provides, claiming they were exempt therefrom under the exemption clause contained in the Act as set forth in § 6(d) thereof. Said § 6 is the same as § 84-3106 of the Ark. Stats. and the pertinent part reads as follows:

"Section 6. Exemptions. There are hereby specifically exempted from the taxes levied in this Act:
. . .

"(d) Tangible personal property used by manufacturers or processors or distributors for further processing, compounding, or manufacturing; tangible personal property used for repair, replacement, or expansion of existing manufacturing or processing facilities or in creating new manufacturing or processing facilities; and tangible personal property used in the repair, replacement, or expansion of existing, or in the creation of new, facilities used for public transmission, communication, or transportation purpose."

Appellees brought suit in the circuit court against the Commissioner for a return of the $716 paid under protest. The lower court found in favor of appellees and rendered judgment for the full amount and the Commissioner prosecutes this appeal.

Appellees admit they are liable for the tax unless exempted as indicated before and both sides agree that the only question involved is the interpretation of § 6(d) set out above. Sub-section (d) lends itself to further division into three parts, and it is so presented and discussed in appellees' brief. For the sake of brevity and clarity we will state these three sub-divisions in our own language. Part 1: Tangible personal property used by manufacturers for further processing is exempt. Part 2: Tangible personal property used in creating a new manufacturing facility is exempt. Part 3: Tangible personal property used in creating new facilities used for public transmission or communication is exempt. Appellees contend they are exempt under all three provisions, but insist, of course, that it is sufficient to show they are exempt under any one. In our opinion the one most favorable to appellees is the second provision and therefore our consideration will be limited to that one only.

Before deciding whether the items purchased by the appellees come within the exemption clause, two principal questions or issues (both of which are discussed

fully by the parties to this action) must first be resolved. First, will Bull Shoals Dam when constructed be used to generate or manufacture electricity within the provisions of the exemption clause? Second, will the Dam be a manufacturing facility within the meaning of the same clause? It is obvious that both questions must be resolved favorably to appellees if they are to prevail.

As to the first question, appellant calls attention to the language used in the Act of Congress, Public Law 228, 1941, authorizing the construction of the Dam and also to the preliminary reports of the U. S. Engineers which indicate, he says, that the main purpose of the Dam is for flood control and not to generate electricity. We recognize that such interpretation is reasonable and we also realize that the U. S. District Court of Alabama has announced in the case of *Ashwander et al.* v. *Tenn. Valley Authority et al.*, 8 Fed. Supp. 893, that the government has no authority to construct dams for the sole or principal purpose of generating electricity. But the opinion goes on to say that when such a dam is constructed it may be used to produce electricity and that under certain circumstances the electricity may be sold to the public. It is common knowledge that this is frequently being done. It is alleged in appellees' complaint and admitted in appellant's answer, that:

"The dual purposes of the dam (and resulting reservoir) are the generation and transmission of electric energy and power and the control of floods. The upper portion of the water storage reservoir created by the dam, for a water depth of 41 feet, has the purpose of aiding in the regulation of floods on the upper White River and will be used for this purpose an average of 20 days per year, and the remaining portion, for a water depth of 66 feet, is provided for and has the purpose of generation of electric energy and power. Initially the power output of the dam will approximate 575 million kilowatt hours in a year of average stream flow, with 3 turbines and generators in operation. Ultimately, a total of 8 turbines and generators are to be installed, and the dam is designed to provide and to accommodate the

total of 8 turbines and generators which are expected to proportionately increase the average power output.''

It must therefore be admitted that at least one of the two primary uses of the Dam will be that of generating electric energy, and we think that is sufficient to bring it within the purview of the Use Tax Act and the exemption clause. To hold otherwise would be to erect an imaginary demarcation line between the primary and secondary uses and purpose of a dam or manufacturing plant which could only result in confusion and uncertainty. It is our view that it is sufficient if a substantial use and purpose of the Dam is to generate electricity. To this effect is the holding in the case of *Commissioner of Corporations and Taxation* v. *Assessors of Boston*, 321 Mass. 90, 71 N. E. 2d 874. There the court rejected the contention of the Assessors that the manufacturing operations of a corporation must comprise its principal business before it can be properly classified as a manufacturing corporation. Among other things the court said: ''Corporations whose manufacturing operations are substantial, whether viewed with respect to the financial receipts they bring to the corporation, or the proportion of the entire corporate income that they comprise, or the percentage of the entire capital which is invested in them, or the number of persons employed in them as compared with the total number of employees of the corporations, or the ratio to the entire business activities of the corporation, must be regarded as manufacturing corporations within our statutory definitions specifying those that are exempted from local taxation of their machinery.''

There can be little doubt that the desire of the Legislature to encourage new industries to locate in the State prompted the passage of this exemption section, and it is proper to view and interpret the section in that light. This fact was recognized by the Massachusetts court in the case of *Assessors of Boston* v. *Commissioner of Corporations and Taxation*, 323 Mass. 730, 84 N. E. 2d 129, where this language was used: ''The statutes granting exemption from the local tax on the machinery of cor-

porations engaged in manufacturing must be fairly construed and reasonably applied in order to effectuate the legislative intent and purpose to promote the general welfare of the commonwealth by inducing new industries to locate here . . .''.

This leaves for consideration the second question, is Bull Shoals Dam a manufacturing facility within the meaning of § 6(d)? It may not be generally considered that the generation of electricity is a manufacturing process, and so far as we are informed our own court has not passed directly on this question, but other courts have held such to be the case. The Alabama court in the case of *Curry* v. *Ala. Power Company,* 243 Ala. 53, 8 So. 2d 521 had under consideration a use tax statute which exempted machines used in ''manufacturing'' tangible personal property. After stating that this question had been presented to the court from various angles and under different subjects and circumstances, and after reviewing many authorities, the court stated that it was ready to decide the question presented and did so in the following language: ''. . . We are constrained to consider and declare an electric light company a manufacturing corporation to all intents and purposes.'' Similar announcements were made in *Beggs* v. *Edison Electric Illuminating Co.,* 96 Ala. 295, 11 So. 381; *People* v. *Knickerbocker Ice Co.,* 99 N. Y. 181, 1 N. E. 669; and *Kentucky Electric Co.* v. *Buechel,* 146 Ky. 660, 143 S. W. 58, 38 L. R. A., N. S. 907.

In view of the above judicial pronouncements we are of the opinion that the Dam when constructed will be a facility for manufacturing electric energy, and that appellees come within the provisions of § 6(d). This leaves open however the question as to what extent the articles in controversy are exempt. We think the intent of the Legislature, as gathered from the language used, was to exempt only such items of personal tangible property as actually went into the construction of the Dam and became some part thereof. It appears to us that it would be a strained construction of the intent of the Legislature as expressed in the exemption clause and one that

would lead to unreasonable extremes to hold that gloves, goggles and flashlight batteries for use of employees of the constructors, and repair parts for locomotives (to mention a few of the items for which exemption is claimed) are used *in creating* the Dam. If it is said these items are used *in creating* the Dam, then why not include medicine and even the motor vehicles and gasoline used in transporting the men and equipment from distant places to the place of construction? Also under such construction it would be possible for a contractor to buy valuable equipment tax fee, to construct a small manufacturing plant in this state and when the job was finished the equipment would be available for other construction work. We think no such intent can reasonably be attributed to the Legislature, and we know of no limits or demarcation lines to fix other than mentioned above.

It would serve no useful purpose to set out the entire list of articles as they are set out in the record and approved for accuracy by both sides. It would be difficult if not impossible for this court to determine just what items are or are not exempt under the limitation announced, but it does appear that some items (such as those mentioned above) are not exempt. It may be necessary in some instances to have the items more fully described and their uses explained before a decision can be made. For this reason and others set forth above the judgment of the lower court is reversed and the cause is remanded for other proceedings consistent with this opinion.

In the opinion of Justices HOLT and ROBINSON tangible personal property used in creating the Dam means tangible personal property which is used in the construction of the Dam and becomes a part thereof, such as the cement and steel which becomes a part of the Dam, also the machinery connected with the structure and by which it is made to function, and to this extent agree with the majority. However they think the tangible personal property consumed in creating the Dam as distinguished from the tools and machinery which are ordinarily used

by the contractors in their business and which are not consumed or worn out in creating the Dam should also be exempt.

The Chief Justice concurs in so much of the opinion as sustains the tax, but does not agree that the hydro-electric plant in contemplation is the type of industry the General Assembly sought to exempt from the tax in question. The answer is found in the fact that under Federal decisions the dam can be constructed only in aid of navigation or for flood control, and the structure and materials entering into it are not, therefore, within the law's purpose in setting up exemptions.

ED. F. McFADDIN, *Justice* (Dissenting). I concur in so much of the majority opinion as sustains the tax[1] levied, and dissent from so much of the majority opinion as allows the appellees (constructors) any exemption from the tax imposed. I am convinced that the constructors have not brought themselves within the purview of the exemption clause.

The constructors here are claiming exemption from paying the Use Tax on materials used in the construction of a multiple purpose dam: that is, the dam is designed for (a) flood control, (b) a navigation project, and (c) a hydro-electric generating plant. The language of the Statute, relied on by the majority to justify any exemption, is this: ". . . tangible personal property used . . . in creating new manufacturing or processing facilities;". Other language contained in the same paragraph—*i.e.,* § 6 (d) of Act 487 of 1949—reads: ". . . tangible personal property used in . . . the creation of new facilities used for public transmission, communication, or transportation purposes."

Certainly neither the flood control nor the navigation project is within the purview of the exemption lan-

---

[1] Neither side discusses the constitutionality of the Use Tax levied by Act 487 of 1949. I regard the constitutionality as still an open question in this State, in view of certain language in *Mann* v. *McCarroll,* 198 Ark. 628, 130 S. W. 2d 72, as explained and discussed in *McLeod* v. *Dilworth,* 205 Ark. 780, 171 S. W. 2d 62. Because the constitutionality of the Use Tax has not been raised in this case, it is not discussed in this opinion.

guage, so the question is whether exemption is to be allowed for materials going into a multiple purpose dam, when only one use of the dam will at most be within the exemption clause. The law is well settled that exemption clauses are strictly construed against the taxpayer. In *Wiseman* v. *Arkansas Wholesale Grocers Asso.*, 192 Ark. 313, 90 S. W. 2d 987, Mr. Justice MEHAFFY cited authorities from Arkansas and other States to sustain this statement:

"In all cases of doubt as to the legislative intention or as to the inclusion of particular property within the terms of the statute, the presumption is in favor of the taxing power, and the burden is on the claimant to establish clearly his right to exemption, bringing himself clearly within the terms of such conditions as the statute may impose."

In 51 Am. Jur. 526, the holdings generally are summarized in this statement:

"When the statute purports to grant an exemption from taxation, the universal rule of construction is that the tax exemption provision is to be construed strictly against the one who asserts the claim of exemption, . . . An exemption from taxation must be clearly defined and founded upon plain language, without doubt or ambiguity. Whenever doubt arises it is to be resolved against the exemption. These principles have been variously expressed. Thus, it is asserted that a claim to a tax exemption must be in terms too plain to be mistaken; that it must be founded upon language which cannot be otherwise reasonably construed, in clear and unmistakable words, or in regard to which there is no doubt as to meaning; that it must be granted in explicit terms; that it must be clear beyond a reasonable doubt; that it must be so plain as to leave no room for controversy, or so clear and unmistakable as to leave no doubt of the legislative purpose. No claim of exemption from taxation can be sustained unless within the express letter or the necessary scope of the exempting clause."

As illustrative of the strict construction applied to exemption clauses, the *prospective use* of property is not

sufficient to allow an exemption from taxation. See 51 Am. Jur. 542, and 61 C. J. 401. The burden is on one claiming an exemption to bring himself within the clear purview of the exemption sought; and this rule has been applied to cases involving the collection of Use Taxes. See 47 Am. Jur. 258, and Annotations in 129 A. L. R. 238 and 153 A. L. R. 628. In the case at bar the exemption is claimed by the constructors for materials to be used in a dam designed for flood control, a navigation project AND a hydro-electric generating plant. Only the latter—hydro-electric generating plant—is an exemption allowed by the Statute. The constructors are using the materials for the construction of a project, two uses of which are not within the exemption clause. In other words, they have not brought themselves entirely within the purview of the exemption. Therefore, they should not be allowed any exemption.

In *Missouri Pacific Hospital Asso.* v. *Pulaski County,* 211 Ark. 9, 199 S. W. 2d 329, we refused tax exemption to a hospital because the property was not "used exclusively for public charity." We held that the failure, to use the hospital exclusively within the purview of the exemption clause, thereby deprived the claimant of tax exemption. Applying the rationale of that holding to the case at bar it follows—as I see it—that the constructors have not shown that the items, on which exemption is sought were used exclusively for a purpose exempted by the Statute. Therefore, I am of the opinion that appellees are not entitled to any tax exemption under the Statute invoked.