0054

HERCULES CONTRACTORS AND ENGINEERS, INC., Respondent-Appellant, v. The SOUTH CAROLINA TAX COMMISSION, Appellant-Respondent.

(313 S. E. (2d) 300)

Court of Appeals

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Joe L. Allen, Jr.,* and *Asst. Atty. Gen. Ronald W. Urban,* Columbia, *for appellant-respondent.*

*Nikki G. Setzler,* of *Setzler, Chewning & Scott,* West Columbia, and *James B. Richardson, Jr.,* of *Ham & Richardson,* Columbia, *for respondent-appellant.*

Heard Nov. 7, 1983.

Decided Jan. 30, 1984.

SANDERS, Chief Judge.

This action was brought by Hercules Contractors and Engineers, Inc., against the South Carolina Tax Commission to recover a total of $31,710.31 in sales taxes paid under protest. These taxes resulted from a disallowance by the Commission of certain exemptions claimed by Hercules in connection with its construction of three waste treatment facilities. Hercules claimed the facilities were machines or attachments to machines and all materials used in their construction were exempt from sales tax pursuant to section 12-35-550(17) of the Code of Laws of South Carolina (1976).

The three facilities in question were identified by the parties and the trial judge as "Klopman," "Hartwell," and "Burlington." The trial judge ordered the Commission to refund $8,831.38 of disputed taxes, holding that the Klopman facility was a machine used in manufacturing tangible personal property for sale, and as such, all materials used in its construction were tax exempt. He denied refund of the balance, holding that the materials used in the construction of the Hartwell and Burlington facilities did not qualify for exemption because these two facilities were built for and owned by the Town of Batesburg, a municipality, not a manufacturer of tangible personal property. Both Hercules and the Commission appeal.

We affirm that portion of the trial judge's order allowing tax exemption for the Klopman materials and reverse the remainder of his order denying tax exemption for the Hartwell and Burlington materials.

We will address the three facilities separately here, beginning with Klopman.

I

## THE KLOPMAN FACILITY

This facility was constructed by Hercules for Klopman Mills at its plant near Society Hill, South Carolina. The facility treats waste of the plant produced in connection with its manufacture of textile products for sale. It is situated in an uncovered area on plant property and consists of various vats, basins, tanks, pumps and other mechanical devices, as well as troughs and pipes which carry the waste from one part of the facility to another.

Section 12-35-550 of the Code of Laws of South Carolina (1976) provides:

> There are exempted from the provisions of this article [Sales Tax]...
> (17) The gross proceeds of the sale of ... machines used in ... manufacturing of tangible personal property .... *provided,* that the term *"machines,"* as used in this article, shall include the parts of such machines [and] attachments ... which are used ... on or in the operation of such machines and which are necessary to the operation of such machines....

Commission Regulation 117-173, Section 2, of Volume 27 of the Code provides that the term "machine" as used in this section includes those machines required by state or federal agencies for the prevention or abatement of pollution caused by other machines used in manufacturing tangible personal property. The fact that a pollution control machine acts upon the effluent from the plant, without acting directly upon the product being manufactured at the plant, is without significance.[1]

The Commission first contends this facility is not a machine, but a "structure," and for this reason the exemption provided by section 12-35-550(17) and Regulation 117-173 is inapplicable. The parts of the facility which the Commission contends are not tax exempt consist of various "vats or basins," (all of which are constructed of concrete and steel reinforcement bars) as well as certain railings, walkways and ladders, and tanks, troughs and pipes.

Contrary to the contention of the Commission, we find that the evidence clearly supports the holding of the trial judge that this facility operates as one single entity, and that entity is a "machine." Its various parts and attachments are integral and necessary to the operation of the system as a whole. Even its railings, walkways and ladders are required by state and federal law and are thus necessary to the overall function of the system.[2]

---

[1] 117-173, Section 2. The term "machine" as defined in § 12-35-550(17) shall include machines, their parts and attachments, when the same are necessary to comply with the order of an agency of the United States or of this State for the prevention or abatement of pollution of the air or water that is caused or threatened by any machines used in the mining, quarrying, compounding, processing and manufacturing of tangible personal property.

The Commission concedes that pollution control devices may qualify for exemption. The same result has been reached judicially in Kentucky, whose statute is similar to ours, without benefit of such a regulation. *Department of Revenue v. State Contracting and Stone Co., Inc.*, 572 S. W. (2d) 421 (Ky. 1978). *Accord. Duke Power Company v. Clayton*, 274 N. C. 505, 164 S. E. (2d) 289 (1968).

[2] The Commission calls attention to certain testimony to the effect that it would be technically possible for the facility to function without these items. However, it overlooks the fact that the facility could not lawfully operate without them and they are therefore parts or attachments necessary to its operation as provided by section 12-35-550(17).

One of the oldest and perhaps most often quoted judicial definitions of a "machine" is found in *Corning v. Burden,* 15 How. 252 at 267, 14 L. Ed. 683 at 690:

> The term "machine" includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result.

Quoted in *Ball v. Coker,* 210 F. 278 at 281 (4th Cir. 1913). The term "machine" has also been more recently defined by the United States Supreme Court as including the concept of "combination." *Halliburton Oil Well Cementing Co. v. Walker,* 329 U. S. 1, 67 S. Ct. 6, 91 L. Ed. 3 (1946). Alabama, whose statutory exemption is similar to our own, does not require a machine to have moving parts if it is an integral part of the manufacturing process. *State v. Taylor,* 262 Ala. 639, 80 So. (2d) 618 (1954), citing *Gulf Oil Corporation v. City of Philadelphia,* 357 Pa. 101, 53 A. (2d) 250 (1947).

We find no judicial interpretation of a statute similar to that of South Carolina which makes a distinction as to whether a machine is a fixture or personal property. Many, if not most, of the larger machines used in manufacturing are at the same time fixtures upon the real estate where they stand.

In a series of well-considered opinions, the courts of Pennsylvania have developed a concept of what constitutes a "machine" for tax exemption purposes. In 1977, the Pennsylvania Supreme Court summarized its decisions dealing with this problem of the connection of a manufacturing machine with the land upon which it sits:

> Under our case, the large, fixed, and immovable nature of the property in question is not dispositive. We have long rejected tests such as "physical attachment" or "applies force or involves the quality of motion" as doctrines not adapted "to the business and improvements of the age." . . . Thus, this Court has held that such fixed and immovable items as ore yards, blast furnace stock bins, and slag pits . . . and oil refinery tanks . . . are machinery and equipment and not taxable as realty. (Citations omitted.)
>
> The test for determining what is machinery and equipment, first formulated in [*In re Borough of Aliquippa*] *Jones & Laughlin,* 405 Pa. [421] at 431, 175 A. (2d) [856]

at 861, provides:

"[I]mprovements, whether fast or loose, which (1) are used directly in manufacturing the products that the establishment is intended to produce; (2) are necessary and integral parts of the manufacturing process; and (3) are used solely for effectuating that purpose are excluded from real estate assessment and taxation. On the other hand ... improvements which benefit the land generally and may serve various users of the land are subject to taxation."

*Commonwealth v. Philadelphia Electric Company*, 472 Pa. 530, 372 A. (2d) 815 at 820 (1977). Thus, a particular "structure" may or may not constitute a machine for tax purposes, depending not upon its form but upon its use. *In Re Borough of Aliquippa*, 405 Pa. 421, 175 A. (2d) 856 (1961). The court in *Gulf Oil* used the metaphor of a butter churn to show that no logical distinction exists between the moving parts of a machine and those which are static:

If for purposes of taxation static machinery must be separated from machinery that moves, it would be necessary, for example, in assessing butter manufactories to separate the blades which beat the cream, from the barrel which contains it.

*Id.*, 53 A. (2d) at 258. Applying this concept which looks to substance rather than form, that court later held that a slag pit with concrete walls which is used in processing molten slag is a machine because it "serves an integral and essential part of the production of slag, and [is] used directly and solely in the manufacturing process." *United States Steel Corp. v. Board of Assessment*, 422 Pa. 463, 223 A. (2d) 92 at 96-97 (1966).

The Commission argues this rationale would lead to the treatment of buildings which house textile mills and nuclear reactors as tax-exempt machines. However, the difference between buildings and the vats and basins at issue here is readily apparent. The concrete vats and basins of Klopman, unlike buildings, have utterly no use apart from the machine of which they are an integral part.

For these reasons, we affirm the trial judge in his holding that the Klopman facility is a machine within the meaning of

section 12-35-550(17) and Regulation 117-173. We therefore reject the contention of the Commission that various parts of the facility are structures.

The Commission next contends Hercules was not en-
■ titled to purchase certain materials used to construct this facility free of the sales tax. These materials consist basically of concrete and steel reinforcement bars. In addressing this question, reference is necessary to several additional Commission regulations which at least superficially, appear to be in conflict with each other. In our discussion of these rather complex and potentially confusing regulations, we will set out their applicable text by way of footnotes, in a desperate (and we hope not futile) effort to make this opinion understandable to the reader.

Regulation 117-174.123 provides that materials used to build machines which manufacture tangible personal property for sale may be purchased by their manufacturers free from sales or use tax.[3] As previously discussed, the Klopman facility is a machine, not a structure. Hercules was the manufacturer of this machine for the Klopman plant, which in turn used it to manufacture tangible personal property for sale. We therefore hold that this regulation clearly provides Hercules was entitled to purchase the materials used to construct this facility free of sales or use tax.

The Commission also argues Regulation 117-174.45 provides that the building materials in issue here may not be purchased tax free because they were not purchased in the

---

[3] 117-174.123. Machines, Sales of Materials to Manufacturers or Compounders From Which They Build Machines.

Manufacturers or compounders are entitled to purchase at wholesale free of the sales or use tax, materials used by them in the building of machines for the purpose of manufacturing or compounding tangible personal property for sale.

It should be noted that only those materials are exempt to manufacturers of compounders which are used by them in building machines for the purpose of manufacturing or compounding tangible personal property for sale. This ruling would not be for application in the case of the use of property in the nature of building materials from which there is erected a "structure", which upon completion might be used for producing tangible personal property for sale.

same form in which they were later used.[4] This regulation is obviously designed to assure that sales or use tax is paid on materials used to improve real property. Both its first and second paragraphs refer specifically to "sales of building materials to contractors, builders, or landowners for resale or use in the form of real estate" or "use (by them) in adding to, repairing or altering real property." The terms "builders," "contractors" and "landowners" are specifically defined as "any person, firm, association or corporation making repairs, or additions to real property." These terms are used throughout the regulation, including its third paragraph.

The rationale by which materials which improve real property are taxed while those which are used to manufacture

---

[4] 117-174.45. Building Materials.

Sales of building materials to contractors, builders, or landowners for resale or use in the form of real estate are retail sales in whatever quantity sold.

Building materials when purchased by builders, contractors, or landowners for use in adding to, repairing or altering real property are subject to either the sales or use tax at the time of purchase by such builder, contractor, or landowner. "Building materials" as used in the Sales and Use Tax Law includes any material used in making repairs, alterations or additions to real property. "Builders," "contractors," and "landowners" mean and include any person, firm, association or corporation making repairs, or additions to real property. The term "building materials" includes such tangible personal property as lumber, timber, nails, screws, bolts, structural steel, elevators, reinforcing steel, cement, lime, sand, gravel, slag, stone, telephone poles, fencing, wire, electric cable, brick, tile, glass, plumbing supplies, plumbing fixtures, pipe, pipe fittings, prefabricated buildings, electrical fixtures, built-in cabinets and furniture, sheet metal, paint, roofing materials, road building materials, sprinkler systems, air conditioning systems, built-in fans, heating systems, floorings, floor furnaces, crane ways, crossties, railroad rails, railroad track accessories, tanks, builders hardware, doors, door frames, window frames, water meters, gas meters, well pumps, and any and all other tangible personal property which becomes a part of real property.

None of the property designated as "building material" comes within the machine exemption, except such items as can be identified at the time of purchase as a part or an attachment or replacement for a machine used in a manufacturing, designed and manufactured for such use, customarily so used, and necessary to the operation of the completed machine. Such bulk items as lumber, cement, random or stock length structural steel, brick, paint, and common nails could never come within the exemption. Such items as pumps, prefabricated processing tanks, steam boilers, structural steel when purchased prefabricated to special design for a machine part, may come within the machine exemption. The materials from which these parts or attachments are fabricated are not exempted. When the landowner or contractor purchases the materials from which he may make a boiler, or pump or tank, he must pay tax to the seller or direct to the State as the case may be.

personal property are not, is equally obvious. When real property is subsequently sold, no sales or use tax is collected, and thus, if the materials which went into the property were not taxed, the tax would be forever lost. On the other hand, when personal property is sold to the consumer, sales or use tax is collected. If the materials sold for use in manufacturing personal property were taxed, they would be taxed a second time when the property was ultimately sold. A purpose of the exemption at issue here is to avoid the pyramiding of taxes and thereby prevent the increase of sales price to the ultimate consumer. *Southeastern-Kusan, Inc. v. South Carolina Tax Commission*, 276 S. C. 487, 280 S. E. (2d) 57 (1981). The following reasoning used in *Taylor* is sound in this case as well:

> While the rule of strict construction against a tax exemption is well established . . . it is also recognized that such a rule "does not impinge upon the all-prevailing rule that a statute is to be construed in accordance with its real intent and meaning, and not so strictly as to defeat the legislative purpose. . . ." *Id.*, 80 So. (2d) at 621.

As previously discussed, Hercules bought these materials to build a machine. It did not buy them for either "resale or use in the form of real estate" or "in adding to, repairing or altering real property," except as merely incidental to the building of the machine. Moreover, Hercules does not meet the definition of a "builder," "contractor" or "landowner" as these terms are defined in the regulation because it was not about the business of "making repairs, or alterations to real property," but instead was building a machine which just happened to be a fixture to real property.

Furthermore, were we to apply the third paragraph of this regulation out of context as urged by the Commission, it would contradict two other Commission regulations which appear later in Volume 27. Regulation 117-174.123, previously discussed, specifically exempts from sales or use tax the purchase of materials used in the building of machines for the manufacture of tangible personal property for sale. Regulation 117-174.120 provides the same requirement of Regulation 117-174.45 as to materials being in the same form when purchased as they will be later used, *but this regulation makes specific exception for materials used in the building of ma-*

*chines as provided by Regulation 117-174.123.*[5]

We therefore hold that Regulation 117-174.45 is inapplicable here and applies instead where the materials are purchased for the purpose of making repairs, alterations or additions to real property, or for resale or use in the form of real estate.

The Commission calls attention to several other regulations in support of its position. We conclude that these regulations are likewise inapplicable to the facts here. Regulation 117-174.136 applies only to "power lines bringing electricity into the plant."[6] No power lines are in issue here. Regulation 117-174.139 applies only to "piping leading to and from storage tanks and piping bringing gas or water into the plant."[7] The piping here carries waste from one part of the facility to another. Regulation 117-174.141 applies to storage tanks (also referred to in Regulation 117-174.139). The tanks here do not "store" the waste but rather are a part of the facility's processing operation.[8]

---

[5] 117-174.120. Machines, Interpretation of the Term "Machines," etc.

Definition: The term ". . . Machines used in mining, quarrying, compounding, processing and manufacturing . . ." shall include all machines used for this purpose. The Statute provides that the term "machines" as used therein ". . . shall include the parts of such machines, attachments, and replacements therefor, which are used, or manufactured for use, on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used . . . ." The terms ". . . parts of such machines," are restricted to the following: (a) they must be used or manufactured for use, on or in the operation of such machines; (b) necessary to the operation of such machines and (c) customarily so used. These restrictions are interpreted to mean that the part or attachment must be purchased in the form in which it will be used by the manufacturer without any fabrication or alteration by him, except the usual and customary minor adjustment, (except as stated at 117-174.123) and that it is a standard part or attachment customarily used and, further, that the machine or machinery on which it is used would not do the work for which it was designed if it were not used.

This, of course, exempts all parts and attachments without which the machine would do no work, and, in addition, it exempts parts and attachments designed to increase the efficiency of the machine.

[6] 117-174.136. Power Lines.

Power lines bringing electricity into the plant do not come within the machine exemption.

[7] 117-174.139. Piping.

Piping leading to and from storage tanks and piping bringing gas or water into the plant does not come within the machine exemption.

[8] 117-174.141. Tanks, Storage.

Storage tanks are not exempted from the tax by the machine exemption.

Regulation 117-174.140 specifically exempts "tanks which are a part of the chain of processing operation."[9]

The Commission argues that such tanks must be "prefabricated" or "metal enclosed." We find no basis for reading the terms "prefabricated" or "metal enclosed" into this regulation which applies, as written, to the tanks here.

For these reasons, we affirm that portion of the trial judge's order requiring a refund of the taxes assessed on the materials used in the construction of the Klopman facility.

## II
## THE HARTWELL FACILITY

This facility differs from the Klopman facility in that it is owned by the Town of Batesburg. The manufacturer Klopman had Hercules build its facility, but the manufacturer at Hartwell was unwilling to do so and instead was prepared to close its doors. Rather than have its citizens suffer this adverse economic impact, the Town obtained funds from the federal government and had Hercules build the facility for the use of the manufacturer, charging for use as incurred. The Hartwell facility is otherwise the same as the Klopman facility in that both are used for and are equally essential to the manufacture of textiles for sale by their respective users. The only difference is one is owned outright by the manufacturer and the other is, in effect, "rented" to the manufacturer by a municipality.[10] The trial judge denied tax exemption on the materials used to construct the Hartwell facility only because it was owned by the municipality, not the manufacturer. We hold otherwise.

---

[9] 117-174.140. Tanks, Processing.
Tanks which are a part of the chain of processing operations are exempted by the machine exemption.

[10] The Commission argues that even though there is evidence that the Hartwell facility was built for the exclusive use of Hartwell Industries, the record is not clear that it is used exclusively by this manufacturer. In support of its argument, the Commission points to the language contained in the government grant which provides that the Town will make the facility available to all persons in its service area. However, it is clear from the record that the facility is at least substantially, if not exclusively, used in the manufacture of tangible personal property and this was a purpose for which it was built. The facility therefore meets the test for tax exemption to be discussed in connection with the Burlington facility.

Section 12-35-550(17) does not mention the identity of the owner of the machine as a requisite of exemption.

This exemption for machines used in manufacturing is intended "... to promote new industry within the State and encourage expansion of present industry." *Southeastern-Kusan,* 280 S. E. (2d) at 59. The reason for this exemption logically extends as much to the Hartwell facility as to Klopman. Both facilities satisfy a pollution control requirement and thereby allow a manufacturer to remain in operation. Section 12-35-550(17) contains no language which would distinguish between the facilities based on ownership rather than use.

Construing a similar exemption, the court in *Duke Power Co. v. Bell,* 156 S. C. 299, 152 S. E. 865 (1930), adopted the following reasoning of the trial judge:

> The Statute exempts from taxation "manufactories," and not the persons, natural or corporate, who may locate, establish, or own and operate such "manufactories." I think, and so hold, that the exemption from taxation granted by the Statute is not a mere personal privilege of exemption, but an immunity attached to specific property, viz., "manufactories"....

In the case of *State Tax Commission v. M S F Leasing Corp.,* 363 Mass. 876, 292 N. E. (2d) 862 (1973), the Commission had denied an exemption for machinery owned by a business corporation but leased to and used by a manufacturer. The court found nothing in the statute to support the Commission's emphasis on ownership as opposed to use and held:

> The machinery and equipment of the taxpayer were used in manufacturing in Massachusetts, and thus, although not owned by a manufacturing corporation, were nonetheless performing the very function for which the exemption was designed. *Id.,* 292 N. E. (2d) at 863.

For these reasons, we hold that where, as here, a substantial use and purpose of a machine is to manufacture tangible personal property for sale, the materials used to construct the machine are exempt from sales or use tax, without regard to the machine's ownership. We therefore reverse the portion of the trial judge's order which holds that

Hercules is not entitled to a refund of the taxes paid on the materials used in the construction of the Hartwell facility.

## III
## THE BURLINGTON FACILITY

This facility, like the Hartwell facility, is municipally owned. However, it is devoted to the treatment of both manufacturing and other waste. The Town had Hercules build it for these two purposes. Burlington was under an order to abate pollution and the Town apparently also needed the facility to treat its municipal waste. Approximately 35% of the waste treated comes from the Burlington manufacturing plant, and the rest comes from ordinary municipal sources.

The Commission argues that if a facility is used by anyone other than a manufacturer, the materials used to construct the facility should not be tax exempt. We hold otherwise.

The Exemption of section 12-35-550(17) extends to the sale of machines used in the manufacture of tangible personal property. It does not provide that the manufacturing use had to be exclusive. Neither does it require that the manufacturing use must be the primary use to which the facility is devoted. It is undisputed that the Burlington manufacturing plant uses the facility in manufacturing textiles. The fact that others also use it obviously cannot cause it not to be a machine used in the manufacture of tangible personal property as prescribed by this section.

At the same time, it would not be reasonable to hold that the legislature intended only a minimum use by a manufacturer be sufficient to make a machine tax exempt. This precise question was addressed and resolved by the Supreme Court of Arkansas in the case of *Morley v. Brown & Root Inc.*, 219 Ark. 82, 239 S. W. (2d) 1012 (1951). The facility in that case was a dam built for what the court referred to variously as "two primary uses" and "two primary purposes." One of these was the manufacture of electricity and the other was the control of floods. Like the instant case, the issue before the court was whether materials used to construct the dam were tax exempt. The court held the exemption applied because "a substantial use and purpose of the dam is to generate electricity." In so holding, the court reasoned as follows:

To hold otherwise would be to erect an imaginary demarcation line between the primary and secondary uses and purpose of a dam or manufacturing plant which could only result in confusion and uncertainty. *Id.*, 239 S. W. (2d) at 1015.

The Massachusetts Supreme Judicial Court reached a similar conclusion in the case of *Commissioner of Corporations and Taxation v. Assessors of Boston*, 321 Mass. 90, 71 N. E. (2d) 874 (1947). There, the issue was whether a corporation was entitled to a tax exemption as a "manufacturing corporation." The court rejected the contention that the manufacturing operations of a corporation must comprise its principal business and held:

Corporations whose manufacturing operations are *substantial* . . . must be regarded as manufacturing corporations within our statutory definitions specifying those that are exempted from local taxation of their machinery. (Emphasis added.) *Id.*, 71 N. E. (2d) at 879.

The Burlington facility, like the Hartwell facility, is substantially used in the manufacture of tangible personal property for sale, and this was a purpose for which it was built. We therefore hold that the materials used in its construction are exempt from sales or use taxes.

Accordingly, we reverse the portion of the trial judge's order which holds Hercules is not entitled to a refund of the taxes paid on the materials used in the construction of the Burlington facility.

Affirmed in part; and reversed in part.

GARDNER and BELL, JJ., concur.