COMPTROLLER *v.* JOSEPH F. HUGHES AND
CO., INC.

[No. 87, October Term, 1955.]

(Two Appeals In One Record)

*Decided February 15, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*David Kauffman, Assistant Attorney General,* and *Edward F. Engelbert, Staff Attorney, Retail Sales Tax Division,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Stedman Prescott, Jr., Assistant Attorney General,* on the brief, for appellant.

*Hilary W. Gans,* for appellee.

HENDERSON, J., delivered the opinion of the Court.

The Comptroller of the Treasury made an assessment of sales tax upon the purchase price of certain items purchased by the appellee during the period from July 1,

1947, to June 30, 1953, and declined to revise the assessment after a hearing. The challenged items fell into the following categories: (1) lumber used for forms in connection with the laying of concrete, (2) nails and hardware used in the form lumber, (3) muriatic acid used to clean bricks, (4) fuel for temporary heating, (5) photographs showing the progress of the work, (6) special bits for small tools. It was stipulated, at the hearing before the Comptroller, that all of these items were purchased to fulfill lump-sum contracts with Baltimore City and other political subdivisions of the State of Maryland, and were called for in the specifications. It was further stipulated that none of these items became component parts of the finished structures, but that the value of all the items was destroyed by the use made of them in the progress of the work. On appeal to the Baltimore City Court, the Comptroller's assessment was reversed as to the first three items and affirmed as to the last three. Both sides have appealed here.

Code (1951), Art. 81, sec. 321, imposes a tax "For the privilege of selling certain tangible personal property at retail as defined above * * *." Sec. 320 (d) provides that " 'Sale' and 'selling' mean any transaction whereby title or possession, or both, of tangible personal property is or is to be transferred by any means whatsoever for a consideration by a vendor to a purchaser, or any transaction whereby services subject to tax under Section 321 of this sub-title are rendered for consideration to any purchaser by any vendor. * * *." Sec. 320 (f) (3) provides that "sale at retail" shall include but shall not be limited to "The sale of building materials to contractors, builders, or landowners for use or resale in the form of real estate." Sec. 322 (a) provides that the tax shall not apply to "Sales to the State of Maryland or any of its political sub-divisions."

Code (1951), Art. 81, sec. 361 (a) authorizes the Comptroller "To make, adopt and amend such rules and regulations as he shall deem necessary to carry out the provisions of this sub-title and to define any terms used

herein." On June 1, 1949, the Comptroller adopted Rule 70, which provides: "Contractors who are performing jobs for the State of Maryland or any of its political subdivisions or a non-profit religious, charitable, scientific, literary or educational institution or organization on a lump-sum basis are not required to pay the tax on materials and supplies which will be incorporated into the job. * * * The contractor must pay the tax on all equipment which he purchases even though it may be used on a job for one of the aforementioned persons. Contractors who are working on lump-sum * * * contracts containing an upset or guarantee clause with the Federal Government must pay the tax on all personal property which they purchase in fulfilling such contracts."

The Sales Tax Division also sent a circular letter, offered in evidence without objection although the appellee does not admit having received it, to all contractors and their suppliers in which it was stated that contractors performing lump-sum contracts for the State of Maryland or any of its political subdivisions, or for non-profit institutions of the types specified, "may purchase tax free the materials which will actually be incorporated into and remain a part of the completed job. The tax must be paid on all materials, supplies and equipment which are not incorporated and do not remain as a part of the completed job for example: form lumber, dynamite, rubber boots and other clothing, tools and equipment, etc."

Rule 70 was before this Court in the case of *John Mc-Shain, Inc. v. Comptroller*, 202 Md. 68 (1953). In that case the contractor had entered into a lump-sum contract with the United States of America for the erection of a clinical building in Maryland to be used by the National Institute of Health, a Federal agency, and the Comptroller had made an assessment of sales and use taxes upon materials incorporated in the building. In deciding that the contractor was not liable for the taxes imposed, we held that the National Institute of Health, although an agency of the Government, fell into the cate-

gory of a charitable, scientific or educational institution, and that the Federal Government was a "person" within the meaning of the statute, and that property purchased by it, which was "incorporated into a new building and not merely an expendable or operating item," fell within the clause of sec. 322 (i) providing that the exemption applied "when such tangible personal property is purchased for use in carrying on the work of such institution or organization." It may be noted in passing that by Ch. 31, Acts of 1954, a proviso was added to sec. 322 (i) that the word "person" should not include the United States of America or any agency or instrumentality thereof. By Ch. 332, Acts of 1955, the words "tangible personal property" were substituted for the words "building materials" in sec. 320 (f) (3).

In dealing with what we described as the most serious objection in the *McShain* case, "that the section, in terms, applies to sales made directly to the person operating, and not to a contractor with such person", we said (p. 73) that "it would be a strained construction to hold that persons operating the activities mentioned should be entitled to the exemption when they purchased directly from a supplier, but not when they acquire the property through an intermediary contractor. The Comptroller's regulation is very specific on the point, and while it is conceded that the Comptroller lacks the power to create an exemption beyond that granted by the statute, his interpretation is entitled to great weight as an administrative construction acquiesced in by the legislature." The observation applies with even greater force in the instant case, since the effect of our ruling has obviously been considered by the Legislature at two subsequent sessions, but no change was made in the law as construed by us in this respect. The further point may be made that we were dealing in the *McShain* case with an exemption in Code (1951), Art. 81, sec. 322 (i) which was limited to property purchased for specified uses, whereas there is no such limitation in sec. 322 (a). But it can hardly be maintained that property which is not incor-

porated into a new building, but is merely an expendable. or operating item, would be within the definitions of. secs. 320(d) and 320(f)(3) as applied to the exemption claimed. All of the items in the instant case were used up, by the contractor, and their value destroyed, before they came into the use of the landowner, and neither title nor possession ever passed to the political subdivisions. Thus, we find in the statute itself confirmation of the line drawn by the Comptroller's Rule 70. We find no justification in the statute for extending the Comptroller's interpretation which we have affirmed on narrow grounds, to include expendable items which he has ruled to be outside the scope of the exemption. Courts in other jurisdictions, construing similar statutes or regulations, have reached the same result. Cf. *Kalill Co. v. Evatt*, 45 N. E. 2d 599 (Ohio) ; *John McShain, Inc. v. District of Columbia*, 205 F. 2d 882 (D. C.) ; and *Morley v. Brown & Root, Inc.*, 239 S. W. 2d 1012 (Ark.).

The appellee argues that the legislative purpose in exempting sales to the State and its political sub-divisions, as well as to charitable and other institutions of the types mentioned, was to enable them to obtain buildings and other property used in their governmental capacity, or for the furtherance of their charitable purposes, at a lower cost, and that purpose would be served by the exemption of expendable items as well as of items that survive the completion of the structures. This may be true, but in construing tax statutes the courts do not now attach much weight to arguments based on the economic incidence of the tax. Cf. *Alabama v. King & Boozer*, 314 U. S. 1, 9. That same argument might be made as to items which go into the contractor's inventory as a part of his capital assets or equipment, and suffer deterioration and depreciation during the progress of the work. In any event it is a matter of legislative policy as to where the line should be drawn.

Reliance is placed upon the case of *Fid. & Dep. Co. v. Lumber Co.*, 176 Md. 217, 226. There it was held by a divided court that lumber used as forms for concrete

was covered by the language of a completion bond covering labor "performed in and about the erection of the structure or the work to be done under the contract" and for "all material furnished, installed, erected and incorporated in said structure or work for which the [principal] * * * is liable." The Court said: "The lumber used for the forms and scaffolding were [sic] quite as essential to the creation of the finished structures as was the labor, for without it they could not have been erected, and in our judgment it would be unreasonable to hold that, by the language of the same sentence, the parties intended to protect the labor and not protect the material man, whose property made such labor possible; indeed there is, it seems, no difference in the coverage provided for labor from that which provides for material. A different conclusion would necessitate that we construe 'and' in the phrase 'all materials furnished, installed, erected and incorporated' in the conjunctive, but in such cases the intention of the parties must control, and to gratify this cardinal rule the conjunctive 'and' should be construed in the disjunctive as 'or' in order to give effect to this intent." (A part of this passage was misquoted in the appellee's brief.) In *Gill v. Mullan*, 140 Md. 1, 5, it was held that fuel for a steam shovel was not "material furnished" within the meaning of the mechanics' lien statute. The problem presented in these cases is quite different from that in the instant case, involving the construction of a tax exemption statute which has received an administrative interpretation by the adoption of Rule 70.

The appellee contends that the words of Rule 70, "incorporated into the job", are broad enough to cover expendable items, as well as those incorporated into buildings. No doubt the word "job" had a wider application than a word such as "building". It was probably used with the thought in mind that a great deal of the work of the State and its political sub-divisions consists of the construction of roads, waterworks and facilities that might not be considered as "buildings". Whatever

the type of construction, we think the words "incorporated into", exclude expendable items. If there were any doubt on the point, the interpretation placed on the Rule by the circular letter issued by the Comptroller is entitled to weight. For purposes of this case we may assume that it was properly admitted in evidence, and relevant on the point of interpretation. In the interpretation of an administrative regulation, it has been said that an administrative interpretation, such as a published bulletin, is of controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Bowles v. Seminole Rock Co.*, 325 U. S. 410, 414, 417. But see *Kraus & Bros. v. United States*, 327 U. S. 614, 623. See also *Davis, Administrative Law*, Sec. 253, and *Newman, "How Courts Interpret Regulations"*, in 35 Cal. L. R. 509.

The appellee also contends that the Comptroller under Rule 63 has given an interpretation to the clause contained in Code (1951), Art. 81, sec. 320(f), "to use or incorporate the property so transferred, as a material or part, or other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining", so as to "include all tangible personal property which is consumed in such operations". We find it unnecessary to pass on the validity of this Rule. If we assume, without deciding, that it correctly interprets the statutory language, or that it is at least within the Comptroller's power of definition, it could not avail the appellee here. It may be noted that the construction turns on the words "to use or incorporate". But in any event, inconsistency in the treatment accorded different classes of taxpayers, whether due to legislative action or administrative interpretation, furnishes no ground for invalidating an interpretation which we find to be sound under the facts of the instant case. We think all of the items here dealt with are subject to the tax.

> *Order affirmed in part and reversed in part, and the ruling of the Comptroller affirmed, costs to be paid by the appellee.*